**516**

Minas H. PAPAS, Ollie M. Papas, his wife, Plaintiffs–Appellants,

v.

The UPJOHN COMPANY, a Delaware corporation qualified to do business in the State of Florida, Zoecon Corporation, a Delaware corporation currently doing business in the State of Florida, Defendants–Appellees.

No. 89–3752.

United States Court of Appeals, Eleventh Circuit.

March 8, 1993.

Lee S. Haramis, Baumer, Bradford & Walters, P.A., Dana G. Bradford, II, Jacksonville, FL, for plaintiffs-appellants.

Lawrence S. Ebner, McKenna & Cuneo, Washington, DC, Frank W. Hession, Rob-

ert B. Guild, Matthews & Hession, Jacksonville, FL, Paul F. Jones, Buffalo, NY, for appellee Zoecon Corp.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before ANDERSON and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

The facts of this case are set out in *Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir.1991) ("*Papas I*"). We must decide whether, in the light of *Cipollone v. Liggett Group, Inc.*, 505 U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), appellants' state law claims against defendant Zoecon Corporation are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C.A. §§ 136–136y ("FIFRA").

Appellants Minas and Ollie Papas brought a diversity action against Zoecon Corporation seeking compensation for injuries Mr. Papas allegedly sustained due to exposure to pesticides manufactured by Zoecon. The Papases' complaint asserted liability based on negligence, strict liability, and breach of an implied warranty of merchantability. Each of these claims was, in whole or in part, a claim of inadequate labeling for alleged dangers arising from exposure to the pesticides. *Papas I*, 926 F.2d at 1020.

In *Papas I*, we reviewed the district court's partial grant of summary judgment in favor of defendants on the labeling claims. We affirmed, holding that "FIFRA impliedly preempts state common law tort suits against manufacturers of EPA-registered pesticides *to the extent that* such actions are based on claims of inadequate labeling." *Papas I*, 926 F.2d at 1026. We confined our analysis in *Papas I* to the doctrine of implied preemption. *Id.* at

1024. Later, the Supreme Court vacated the judgment in *Papas I* and remanded this case to us for further consideration in the light of *Cipollone v. Liggett Group, Inc.*, 505 U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). *Papas v. Zoecon Corp.*, —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Having looked at *Cipollone*, we conclude that FIFRA expressly preempts the Papases' claims to the extent they are based on inadequate labeling or packaging.

I.

In *Cipollone*, the Supreme Court analyzed, for the claims in that case, the preemptive effect of the Federal Cigarette Labeling and Advertising Act, enacted in 1965 ("the 1965 Act"), and its successor, the Public Health Cigarette Smoking Act of 1969 ("the 1969 Act"). The Court found no cause to look beyond the express preemption provisions contained in section 5 of the 1965 and 1969 Acts.

When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' [citations omitted] 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation.... Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.

505 U.S. at ——, 112 S.Ct. at 2618. The Court then analyzed the pre-emption provisions of the 1965 and 1969 Acts to decide if the provisions expressly preempted the plaintiff's various claims. *Id.*

In the light of *Cipollone*, we will determine FIFRA's preemptive effect on the Papases' claims under the express pre-emption doctrine. Like the statutes at issue in *Cipollone*, FIFRA contains a provision explicitly addressing, and providing a reliable indicium of, state authority.[1] Congress

---

1. See *Papas v. Upjohn Co.*, 926 F.2d 1019, 1022–24 (11th Cir.1991), for our analysis of FIFRA's legislative history and regulatory scheme.

specified the extent to which the states may regulate pesticides in FIFRA's section 136v:

§ 136v. Authority of States

(a) In General

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

(c) Additional Uses

(1) A State may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this subchapter and if registration for such use has not previously been denied, disapproved, or canceled by the Administrator....

7 U.S.C.A. § 136v (West 1980 & Supp. 1992). To determine FIFRA's pre-emption of the Papases' claims we will "only identify the domain expressly pre-empted" by FIFRA section 136v. *See Cipollone,* 505 U.S. at ——, 112 S.Ct. at 2618.

## II.

■ Section 136v(b) pre-empts those of the Papases' state law claims which constitute "requirements for labeling or packaging in addition to or different from" the labeling and packaging requirements imposed under FIFRA. *Cipollone* convinces us that the term "requirements" in section 136v(b) "sweeps broadly and suggests no distinction between positive enactments and the common law." *Cipollone,* at ——, 112 S.Ct. at 2620. Common law damages awards are one form of state regulation and, as such, are "requirements" within the meaning of section 136v. *See Id.; Tay-*

*lor v. General Motors Corp.,* 875 F.2d 816, 824 n. 16 (11th Cir.1989), *citing San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). To the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's "labeling or packaging" failed to meet a standard "in addition to or different from" FIFRA requirements, section 136v pre-empts the claims.

■ The Papases' concede that each of their negligence, strict liability, and breach of implied warranty counts alleges in part that Zoecon failed to warn users that its product contained certain harmful chemicals and failed to inform users to take appropriate precautionary measures. Those allegations, like the failure to warn claims in *Cipollone,* require the finder of fact to determine whether, under state law, Zoecon adequately labelled and packaged its product. This inquiry is precisely what section 136v forbids. FIFRA denies states the authority to require that pesticide manufacturers conform to a state law standard of care in their labelling and packaging practices. Thus, to the extent that the Papases' claims require a showing that Zoecon's labelling or packaging "should have included additional, or more clearly stated, warnings, those claims are pre-empted." *See Cipollone,* 505 U.S. at —— – ——, 112 S.Ct. at 2621–22. Thus the *Cipollone* opinion dictates, under an express pre-emption analysis, the same result we reached earlier under the implied pre-emption doctrine. *Cf. Papas I, supra,* 926 F.2d at 1026.

## III.

■ The Papases say that they seek to prove Zoecon *failed to disclose* to the Environmental Protection Agency ("EPA"), the agency which administers FIFRA, that Zoecon's product contained benzene. The Papases contend that this alleged omission subjects Zoecon to an agency enforcement action for "misbranding,"[2] and they urge

---

**2.** Under FIFRA, a pesticide is misbranded if the label does not contain warnings and directions for use which, if complied with, are "adequate

to protect health and the environment." 7 U.S.C.A. § 136(q)(1)(F), (G). A manufacturer is subject to penalties under FIFRA if its pesticide

that common law damages awarded on this omission theory would not constitute a "requirement ... in addition to or different from" FIFRA requirements. We reject this argument. As we noted in *Papas I*, it is for the EPA Administrator, not a jury, to determine whether labelling and packaging information is incomplete or inaccurate, and if so what label changes, if any, should be made. *See Papas I, supra*, 926 F.2d at 1026 n. 8. States may not interfere with the methods designed by Congress to achieve FIFRA's goals. *See Gade v. National Solid Wastes Management Association*, — U.S. —, —, 112 S.Ct. 2374, 2385, 120 L.Ed.2d 73 (1992). We think FIFRA leaves states with no authority to police manufacturers' compliance with the federal procedures.

## IV.

■ Appellants urge us to hold that their warning claims "unrelated to labeling and packaging" are not pre-empted by section 136v. They contend that because the language of 136v refers only to "labeling or packaging," the section does not pre-empt failure to warn claims based on point-of-sale signs, consumer notices, or other informational materials that are "unrelated" to labeling and packaging. But any claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging. If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends. Plaintiffs may not interfere with the FIFRA scheme by bringing a common law action alleging the inadequacy of, for example, point-of-sale signs. Because claims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling and packaging failed to warn the user, we conclude that

these claims are also pre-empted by FIFRA.

## V.

■ The Supreme Court ruled that the *Cipollone* plaintiff's express warranty claims were not pre-empted by the 1969 Act. The Papases argue that this aspect of *Cipollone* mandates a finding of no pre-emption on their breach of *implied* warranty claim. We disagree.

In *Cipollone*, four Justices concluded that "the 'requirements' imposed by an express warranty claim are 'not 'imposed under State law,' but rather imposed *by the warrantor.*" *Cipollone, supra*, 505 U.S. at —, 112 S.Ct. at 2622. On the basis of that reasoning, the plurality concluded that Cipollone's breach of express warranty claim was not pre-empted by the 1969 Act. *Id.* at — – — 112 S.Ct. at 2622–23. But an implied warranty is a requirement imposed under state law and is pre-empted by FIFRA.

Express warranties are promises that are made in some, but not all, sales contracts. Express warrantors seek competitive advantage by promising buyers that certain factual representations about their goods are true. Liability for breach of an express warranty has a voluntary quality; it "derives from, and is measured by, the terms of that warranty." *Cipollone*, at —, 112 S.Ct. at 2622.

In contrast, implied warranties of merchantability arise by operation of law. *See Wagner v. Mars, Inc.*, 166 So.2d 673 (Fla. App.1964); *Atlantic Distributors, Inc. v. Alson Mfg. Co.*, 141 So.2d 305 (Fla.App. 1962). Florida has codified the implied warranty of merchantability, which, unless waived or modified, is always implied in a sale of goods by a merchant and includes the statutory requirement that goods "are adequately contained, packaged, and labeled as the agreement may require." Fla. Stat.Ann. § 672.314 (1992). Although lia-

is misbranded. 7 U.S.C. § 136j(a)(1)(E). Because appellants "misbranding" theory is inseparable from FIFRA procedural requirements, we find no merit in appellants' contention that this

theory of recovery is based on a generalized "duty not to deceive." *Cf. Cipollone*, 505 U.S. at —, 112 S.Ct. at 2624.

bility for breach of an *express* warranty may be viewed as "imposed by the warrantor," *Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2622, liability for breach of an *implied* warranty is based on "the agreement, *imposed by law*, to be responsible in the event the thing sold is not in fact fit for the use and purposes intended." *Arcade Steam Laundry v. Bass*, 159 So.2d 915 (Fla.App. 1964) (emphasis added). In essence, when plaintiffs argue that an implied warranty obligates the seller, plaintiffs acknowledge that the seller did not volunteer for the liability.

FIFRA pre-empts claims based on requirements imposed *by states.* 7 U.S.C. § 136v(b). If Zoecon were to have liability for breach of an *implied* warranty of merchantability, that liability would not be self-inflicted. Instead, that liability would be based on a requirement imposed by state law. Therefore, to the extent the implied warranty claim depends upon inadequacies in labelling or packaging, FIFRA section 136v pre-empts the claim.

## VI.

We conclude that FIFRA expressly pre-empts state common law actions against manufacturers of EPA-registered pesticides to the extent that such actions are predicated on claims of inadequate labeling or packaging. To the extent that appellants' negligence, strict liability, and breach of implied warranty claims require a showing that Zoecon's labeling and packaging caused the alleged injury, those claims are preempted by FIFRA. Claims that do not challenge Zoecon's labeling and packaging practices are not pre-empted.

AFFIRMED.