Lynn E. WADLINGTON,
Plaintiff/Appellant,

v.

MILES, INC., Service–Master Consumer Services Company, Inc., and Terminix International, Inc., a Tennessee Corporation, Defendants/Third Party Plaintiffs.

SERVICE–MASTER CONSUMER SERVICES COMPANY, INC., and Terminix International, Inc., a Tennessee Corporation, Third Party Plaintiffs/Appellees,

v.

MILES, INC., Third Party Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Nov. 28, 1995.

Application for Permission to Appeal
Denied by Supreme Court
March 25, 1996.

Russell C. Winston, Mike Roberts, Memphis, for Plaintiff/Appellant.

Oscar C. Carr, III, Glankler Brown, Memphis, for Defendants/Third Party Plaintiffs/Appellees, Service–Master Consumer Services, Inc. and Terminix International, Inc.

James L. Moore, Holtzman, Urquhart, Bayko & Moore, P.C., Houston, Texas, Charles C. Harrell, Heiskell, Donelson, Bearman, Adams, Williams & Caldwell, Memphis, for Third Party Defendant/Appellee.

TOMLIN, Senior Judge.

Lynn E. Wadlington ("plaintiff") appeals from the judgment of the Shelby County Circuit Court granting summary judgment on her state law tort and contract claims. The trial court granted summary judgment on the grounds that all of plaintiff's claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C.A. §§ 136–136y (1980 & Supp.1995). We affirm.

The damage sustained by plaintiff allegedly took place when employees of Terminix International, Inc. ("Terminix"), a wholly owned subsidiary of Service–Master Consumer Services Co., Inc. ("Service–Master") treated plaintiff's small wooden storage shed located in Shelby County with Pryfon–6 as part of Terminix's Termite Protection Plan. Pryfon–6 is a subterranean termite control pesticide manufactured by Miles, Inc. ("Miles")[1] which received EPA approval for sale in 1982. From 1987 to 1992 Terminix purchased Pryfon–6 for use by its retail branches from Miles and its predecessor, Mobay Corporation. Although not spelled out in the complaint, plaintiff apparently suffered termite infestation in and around the wooden storage house at some later date.

In 1993, plaintiff filed this suit against Service–Master, Terminix and later Miles for the damage allegedly caused to her storage house.[2] In her amended complaint, plaintiff asserted four causes of action: (1) breach of contract, express and implied; (2) negligence; (3) gross negligence; and (4) prima facie tort.

Thereafter, defendants Service–Master and Terminix, along with third-party defendant Miles, filed motions for summary judgment on the ground that FIFRA preempts all of plaintiff's claims. The trial court granted both motions, finding that there was no genuine issue of material fact and that

---

1. Plaintiff amended her complaint to add the manufacturer of Pryfon–6, Miles, Inc. ("defendant Miles"), as co-defendant.

2. Plaintiff sought to have this suit certified as a class action, but no certification ever took place.

each of plaintiff's claims were preempted pursuant to FIFRA. Plaintiff's sole issue on appeal is whether the trial court erred in granting summary judgment to Service–Master and Terminix on her various state law claims. We find no error and affirm.

Plaintiff filed a complaint in December 1993 alleging that defendants manufactured, offered, sold, and applied a termiticide that simply did not work. Plaintiff alleged that defendants did the following four things that make up her cause of action:

1. That the Defendants while knowing their product, a termiticide, did not work and did not provide a protection against termite infestation of structures breached their contract with and committed torts on Plaintiff by failing to formulate, advertise, distribute, offer, sell, apply and maintain an effective termiticide.

2. That the Defendants' actions were done knowingly, recklessly, willfully, maliciously and intentionally.

3. That the acts of omissions and misrepresentations by Defendants amounted to gross negligence and was a knowing, intentional or reckless disregard of the duties and standards of care expected by purchasers from manufacturers, advertisers, distributors, sellers and applicators of termiticides and termite treatments.

4. That Defendants by their actions committed a knowing, willful planned tort in a surreptitious and malevolent manner.

All of the above statements of claims are substantially verbatim from plaintiff's complaint, as amended.

■ In ruling on motions for summary judgment, both the trial court and this court must review the matter in the same manner as a motion for directed verdict made at the close of plaintiff's proof—i.e., we must view all factual evidence in the light most favorable to the nonmoving party and draw all legitimate conclusions of fact therefrom in his or her favor. *Daniels v. White Consolidated Indus., Inc.,* 692 S.W.2d 422, 424 (Tenn.App. 1985).

■ The party seeking summary judgment has the burden of demonstrating to the court that there are no disputed, material facts creating a genuine issue for trial, as the terms have been defined, and that he is entitled to a judgment as a matter of law. When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is necessary. *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993).

■ Defendants contend that all of plaintiff's claims are based on a failure to warn and are therefore preempted by FIFRA. FIFRA is a comprehensive federal statute that regulates pesticide use, sales and labeling, and grants enforcement authority to the Environmental Protection Agency (EPA). *Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555, 559 (9th Cir.1995). FIFRA expressly prohibits states from posing "any requirements for labeling or packaging in addition to or different from those required" under it. 7 U.S.C.A. § 136v(b) (Supp.1995).

■ The Supremacy Clause of the United States Constitution states that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or laws of any state to the Contrary notwithstanding." U.S. Const. art. 6 cl. 2. Congressional intent determines whether a federal statute preempts state law. *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 137–38, 111 S.Ct. 478, 481–82, 112 L.Ed.2d 474 (1990). The Supremacy Clause results in federal preemption of state law if: (1) Congress expressly preempts state law; (2) Congress has completely supplanted state law in that field; (3) adherence to both federal and state law is impossible; or (4) the state law impedes the achievements of the objectives of Congress. *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 111 S.Ct. 2476, 2481–82, 115 L.Ed.2d 532 (1991). Furthermore, courts will generally not preempt state law absent the "clear and manifest purpose of Congress" for federal preemption. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230,

67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Where Congress has included an express preemption provision in an act, there is no need to infer Congressional intent to preempt state laws from the substantive provisions of the legislation. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517–18, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992).

In *Cipollone*, the United States Supreme Court held that Congress intended to regulate exclusively the warning requirements for cigarette packaging under section 5(b) of the Public Health Cigarette Smoking Act of 1969 ("1969 Cigarette Act"), which preempted state laws from requiring additional cigarette warning requirements. *Id.* at 519–20, 112 S.Ct. at 2619–20. *Cipollone* held that plaintiffs are barred from pursuing state common law claims based on failure to warn to the extent that these claims attacked federal requirements for cigarette advertising or promotion. *Id.* at 523–24, 112 S.Ct. at 2621–22.

Having addressed the issue of preemption in the context of cigarette labeling in *Cipollone*, the Supreme Court has indicated that the same analysis should be applied to FIFRA preemption determinations. *Pure–Gro*, 54 F.3d at 559.

The preemption provision of the 1969 Cigarette Act states:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

Section 136v(b) of FIFRA states that "such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C.A. § 136v(b).

The court in *Pure–Gro* observed that there was no noticeable difference between the language in the 1969 Cigarette Act and the language in FIFRA. It observed:

Like the preemption provision of the 1969 Cigarette Act, § 136v(b)· uses the broad term 'requirements' preempt state actions for damages. The Seventh Circuit has noted that to '[n]ot even the most dedicat-

ed hair-splitter could distinguish these statements. If common law actions cannot survive under the 1969 cigarette law, then common law actions for labeling and packaging defects cannot survive under FIFRA.'

*Pure–Gro*, 54 F.3d at 559–60 (quoting *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir.1993)). In *Wright v. Dow Chemical USA*, 845 F.Supp. 503, 508 (M.D.Tenn.1993), the court likewise concluded that under the *Cipollone* standards, FIFRA expressly preempts state law regulation in the area of pesticide labeling.

Based upon the language used in FIFRA, it appears that Congress intended to create a broad definition of labeling. Section 136(p) of FIFRA provides in part as follows:

(1) *Label.*—The term "label" means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.

(2) *Labeling.*—The term "labeling" means all labels and all other written, printed, or graphic matter—

(A) accompanying the pesticide or device at any time; or

(B) to which reference is made on the label or in literature accompanying the pesticide. . . .

7 U.S.C.A. § 136(p) (Supp.1995). The EPA labeling requirement also ensures that a product has not been "misbranded." 7 U.S.C.A. § 136(q) (Supp.1995). A pesticide is misbranded if "its labeling bears any statement ... which is false or misleading in any particular," or "does not contain directions for use which are necessary for effecting the purpose for which the product is intended." 7 U.S.C.A. § 136(q)(1)(A) & (F).

Based upon the broad definition of labeling, federal courts have held that state law claims based upon failure to warn are preempted by § 136v(b) of FIFRA. *Taylor AG Indus. v. Pure–Gro*, 54 F.3d 555, 560 (9th Cir.1995); *Lowe v. Sporicidin Int'l*, 47 F.3d 124, 129 (4th Cir.1995); *Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887, 888 (8th Cir.1994); *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1024 (5th Cir.1994); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 748 (4th Cir.

1993); *King v. E.I. DuPont de Nemours & Co.*, 996 F.2d 1346, 1349 (1st Cir.), *cert. denied*, 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir.1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.), *cert. denied*, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *Papas v. Upjohn Co.*, 985 F.2d 516, 518–19 (11th Cir.), *cert. denied sub nom. Papas v. Zoecon Corp.*, 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993).

In *Cipollone*, the supreme court held that the phrase in the 1969 Cigarette Act to the effect that "no requirement or prohibition based on smoking and health shall be imposed upon state law with respect to the advertising...." of cigarettes "sweeps broadly" in that the phrase "no requirement or prohibition" contained therein "suggests no distinction between positive enactments and common law.... The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone*, 505 U.S. at 521, 112 S.Ct. at 2620.

The fact that section 136v(b) states that "such State shall not impose or continue in effect any requirements for labeling or packaging" establishes no noticeable differences between the language in the two acts, and that court has encouraged the federal courts of this country to consider the application of FIFRA in light of their holding in *Cipollone*.

Our determination of whether FIFRA preempts plaintiff's claims depends upon whether plaintiff's claims create state common law duty to warn requirements that conflict with FIFRA's labeling requirements.[3] To determine FIFRA's preemption of plaintiff's claims we will only identify the domain expressly preempted by FIFRA's section 136v.

■ To the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's "labeling or packaging" failed to meet a standard "in addition to or different from" FIFRA requirements, sec-

tion 136v preempts the claims. *Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir. 1993).

Plaintiff's amended complaint, with which we ultimately deal to determine what defendants did or did not do that would justify plaintiff's state law claims, are written in broad, general terms that in large measure are hard to classify and quantify. We note particularly paragraphs 30 through 33 of this amended complaint, which in our opinion spells out the breadth and scope. of plaintiff's complaint, albeit in generic terms (conception ours).

30. Plaintiff alleges that these Defendants knew, or could have known with the exercise of reasonable care, that this scientific phenomenon of microorganisms consuming the organophosphorus insecticide would result in the rapid degradation of the insecticide when placed in the ground over a wide diversity of soil conditions.

31. Plaintiff alleges that these Defendants therefore knew, or could have known with the exercise of reasonable care, at and upon the date on which they introduced Pryfon–6 to the commercial market place of use and application as a termiticide to protect wooden structures, that such product could not or would not be capable of providing continuous, effective long term protection against termite infestation and damage as represented to Plaintiff and members of the Class by Defendants.

32. Plaintiff alleges that these Defendants as manufacturer, distributor, retailer, and applicator, of Pryfon–6 as purported continuous and effective long term termiticide for the protection of wooden structures from termites, negligently, recklessly, knowingly, willfully and intentionally misrepresented to and misstated to retail customers the effectiveness of Pryfon–6 as a long term, continuous termiticide which would provide protection for wooden structures against termite infestation and damages.

33. Plaintiff alleges that these Defendants, after removing Pryfon–6 from the market place, as alleged herein, have negli-

---

**3.** Because plaintiff's complaint contained no state statutory claims, we are considering common law claims only. Nonetheless, the result would be the same.

gently, recklessly, willfully, knowingly and intentionally failed and refused to inform retail customers that Pryfon–6 does not, as represented by these Defendants, provide effective continuous, long term protection against termite infestation and damage to wooden structures. Plaintiff alleges that Defendant Terminix has knowingly, willfully and intentionally failed to give notice to or in any way inform the approximately 1.9 million current customers that their homes, apartments, dwellings, buildings and other structures have been treated with a purported termiticide which does not provide continuous, long term effective protection against infestation and damage by termites. Plaintiff alleges that Defendant Miles and Mobay along with Defendant Service–Master through Paragon and defendant Terminix have negligently, recklessly, willfully, knowingly and intentionally failed to inform the public or their customers that Pryfon–6 does not provide continuous, long term effective protection against infestation and damage by termites. Plaintiff alleges, upon information and belief, that these Defendants continue to offer and sell Pryfon–6 outside the continental United States.

Plaintiff contends that her claims relate solely to defendants' manufacture and sale of an ineffective pesticide and for this reason is not a "labeling" claim. As can be seen in the above, plaintiff's claims are substantially to the effect that defendants knew or should have known that Pryfon–6 was ineffective at providing long-term termite protection and thereby allegedly "misstated" and or "misrepresented" the chemical's effectiveness to defendants' retail customers. When one considers the broad definition of "labeling" under FIFRA, as revealed by the great majority of the post-*Cipollone* cases dealing with FIFRA, it can readily be seen that plaintiff's claims by their very nature are an attack on the adequacy of Pryfon–6's EPA-approved label. *See Arkansas–Platte & Gulf v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.1992) (stating that under the circumstances therein, plaintiff's claims amounted to "nothing more than a duty to label a product to provide information."). Furthermore, even if plaintiff by her claims were not

challenging Pryfon–6's existing label, her claims would be preempted. In *Papas v. Upjohn,* 985 F.2d 516 (11th Cir.1993), the 11th Circuit held that section 136v(b) of FIFRA preempts failure to warn claims based upon "point of sale signs, consumer notices, or other information or materials that are 'unrelated' to labeling and packaging," stating:

> [A]ny claims that point of sale-signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging.... Because claims challenging the adequacy of warnings on materials other than the label or package of the product necessarily imply that the labeling and packaging failed to warn the user, we conclude that these claims are also pre-empted by FIFRA.

*Id.* at 519.

Even if it might be concluded that any of the claims of plaintiff do not involve labeling in any method or manner and clearly fall outside the preemption clause of section 136v(b), plaintiff has not raised a genuine issue of material fact to withstand the defendants' motions for summary judgment. In support of their response in opposition to the summary judgment motions of Service–Master and Terminix, plaintiff relies exclusively on the affidavit of Dr. Richard Lipsey, a professional toxicologist and entomologist. We are of the opinion that Dr. Lipsey's affidavit fails to meet the standards as set out in T.R.C.P. 56.05 to the effect that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible into evidence, and shall show affirmatively that the affiant is competent to testify unto the matter stated therein." In speaking to one aspect of this rule, our supreme court in *Byrd v. Hall,* 847 S.W.2d 208, 215–16 (Tenn.1993), stated:

> Moreover, the facts on which the nonmovant relies must be admissible at the trial but need not be in admissible form as presented in the motion (otherwise an affidavit, for example, would be excluded as hearsay). To permit an opposition to be based on evidence that would not be ad-

missible at trial would undermine the goal of the summary judgment process to prevent unnecessary trials since inadmissible evidence could not be used to support a jury verdict.

Dr. Lipsey's legal conclusions regarding what claims are preempted by FIFRA and opinions about the efficacy of Pryfon–6 do not constitute such facts as would be admissible in evidence as required by Rule 56.05. *See Yater v. Wachovia Bank,* 861 S.W.2d 369, 373 (Tenn.App.1993).[4]

Based upon the foregoing, the judgment of the trial court ordering summary judgment in favor of all defendants is affirmed. Costs in this cause on appeal are taxed to the plaintiff, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.

---

**4.** Plaintiff never filed a response to the motion for summary judgment of defendant Miles. Therefore, for this additional reason, the affidavit of Dr. Lipsey cannot serve as summary judgment evidence against this defendant.