# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **HARRIS HUGHES, JR.**, | ) | Haywood County Circuit Court |
|  | ) | No. 2898 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9611-CV-00290 |
|  | ) |  |
| **TENNESSEE SEEDS OF** | ) |  |
| **BROWNSVILLE, INC., WATERFIELD** | ) |  |
| **GRAIN CO., INC., LINDA FREEMAN,** | ) |  |
| **in her capacity as Manager of** | ) |  |
| **TENNESSEE SEEDS OF** | ) |  |
| **BROWNSVILLE, INC., FMC** | ) |  |
| **CORPORATION, and MILES** | ) |  |
| **CORPORATION**, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |

FILED

# FILED

**November 14, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Haywood County at Brownsville.
**Honorable Dick Jerman, Jr., Judge**


**Robert L. Green**,
**Darryl D. Gresham**,
NEELY, GREEN, FARGARSON, BROOKE & SUMMERS, Memphis, Tennessee
**Steven R. Walker**, Memphis, Tennessee
Attorneys for Plaintiff/Appellant.

**James M. Doran, Jr.**,
**E. Frances Coughlin**,
MANIER, HEROD, HOLLABAUGH & SMITH
Attorneys for Defendants/Appellees Tennessee Seeds of Brownsville, Inc., Waterfield Grain Co.,
Inc., and Linda Freeman.

**Matthew J. Sweeney, III**, Nashville, Tennessee
**Lee Davis Thames**, Jackson, Mississippi
**Michael E. McWilliams**, Jackson, Mississippi
Attorneys for Defendant/Appellee FMC Corporation.

**Larry E. Killebrew**,
**Bradley E. Trammell**,
BAKER, DONELSON, BEARMAN & CALDWELL, Memphis, Tennessee
**Jack E. Urquhart**,
**John W. Ghezzi**,
HOTLZMAN & URQUHART, P.C., Houston, Texas
Attorneys for Defendant/Appellee Miles, Inc.


OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiff Harris Hughes, Jr., appeals the trial court's order entering summary judgment in favor of Defendants/Appellees Tennessee Seeds of Brownsville, Inc., Waterfield Grain Company, Linda Freeman (in her capacity as manager of Tennessee Seeds), FMC Corporation, and Miles Corporation.[1] We reverse in part the trial court's judgment based on our conclusion that the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) does not preempt all of Hughes' state-law claims against the Defendants.

## I.  Facts and Procedural History

In ruling on the Defendants' motions for summary judgment, the trial court, and this court on appeal, must view all of the evidence in favor of Hughes, the nonmoving party, and draw all reasonable inferences from the evidence in Hughes' favor. ***Byrd v. Hall***, 847 S.W.2d 208, 214 (Tenn. 1993).  The evidence in this case consisted chiefly of Hughes' lengthy deposition. When viewed in accordance with the foregoing standard, Hughes' deposition reveals the following facts.

In the spring of 1991, Hughes planted approximately 4200 acres of cotton. When Hughes began planting his crop in April 1991, he used a chemical program which included Terraclor Super X, Temik, Command, Di-Syston, and Cotoran.  Hughes included Command in his chemical program based upon the advice of Linda Freeman, the manager of Tennessee Seeds, and Tom Hayes, a representative of FMC.  Freeman and Hayes recommended that Hughes use Command even though Command had not yet been approved for use on cotton in Tennessee. Freeman and Hayes represented that Command would be approved for use on cotton within "just a matter of days" and, in any event, by the time planting season started.  Hayes specifically recommended the use of Command on Hughes' 1991 cotton crop "because it was a very good velvet leaf control material, and it was a lot cheaper than" an alternative product.  When Hughes agreed to use Command, Freeman and Hayes also recommended that he use Di-Syston in conjunction with Command as a seed "safener."

---

[1]At some point during the proceedings below, Miles Corporation became Bayer Corporation.

On the advice of Linda Freeman, in early May Hughes changed his chemical program by substituting the chemical Direx for Cotoran. Because of rain, Hughes had decided to broadcast his chemicals instead of applying the chemicals in bands. According to Freeman, Hughes could broadcast Direx just as cheaply as he could band Cotoran. The label on the Di-Syston container cautioned the user against using "certain pre-emergent herbicides" in conjunction with Di-Syston. Hughes knew that Direx was a pre-emergent herbicide, so he asked Freeman about its use in conjunction with Di-Syston. Freeman represented that it would be "okay" to use Direx with Di-Syston and, in fact, recommended the combination to Hughes. Hughes purchased all of his chemicals from Freeman at Tennessee Seeds, and he relied upon her expertise in deciding which chemicals to use.

After Hughes completed his planting for the 1991 season, he noticed that all of the cotton treated with the combination of Command, Di-Syston, and Direx either died or suffered severe damage, while the cotton treated with Command, Di-Syston, and Cotoran survived. Hughes later learned that the cotton died because he mixed an organophosphate (Di-Syston) with a urea-based product (Direx) and that Freeman should not have recommended these chemicals in combination with one another. Hughes further learned that the damage to his cotton crop was exacerbated by his use of Command, which tended to damage the cotton plant by whitening the leaves and stunting the plant's growth when applied at rates recommended for other crops.

Hughes subsequently filed this products liability action against the Defendants seeking to recover for the damage caused to his 1991 cotton crop. Hughes sued the following entities: Tennessee Seeds and its manager, Linda Freeman, who sold the chemicals to Hughes; Waterfield Grain Company, the parent company of Tennessee Seeds; FMC Corporation, the manufacturer of Command; and Miles Corporation, the manufacturer of Di-Syston. The manufacturer of Direx was not a party to this lawsuit. Hughes' complaint asserted the following counts against all named Defendants: (1) products liability (negligence); (2) products liability (strict liability in tort); and (3) breach of express and implied warranties. Additionally, Hughes' complaint asserted counts for breach of fiduciary duty and negligence against Freeman,

Tennessee Seeds, and Waterfield Grain Company.

The Defendants moved for summary judgment, contending that all of Hughes' claims against them were preempted by FIFRA. The trial court granted the Defendants' motions, and this appeal followed.[2]

## II. FIFRA Pre-emption

This court previously addressed the pre-emptive effects of FIFRA in *Wadlington v. Miles, Inc.*, 922 S.W.2d 520 (Tenn. App. 1995):

> FIFRA is a comprehensive federal statute that regulates pesticide use, sales and labeling, and grants enforcement authority to the Environmental Protection Agency (EPA). *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 559 (9th Cir. 1995). FIFRA expressly prohibits states from posing "any requirements for labeling or packaging in addition to or different from those required" under it. 7 U.S.C.A. § 136v(b) (Supp. 1995).

*Wadlington*, 922 S.W.2d at 522. Accordingly, section 136v(b) of FIFRA prevents states from enacting legislation which conflicts with FIFRA's labeling requirements.

In addition, section 136v(b) prevents state courts from granting relief on common-law claims if the relief granted would conflict with FIFRA's labeling requirements. *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.), *cert. denied*, 510 U.S. 913 (1993). As explained by the court in *Papas*,

> [T]he term "requirements" in section 136v(b) "sweeps broadly and suggests no distinction between positive enactments and the

---

[2]The trial court's order further stated that "[f]urther, the proof presented does not demonstrate that the plaintiff has gone forward with any proof that the defendants conducted themselves in any tortious manner or that the combination of the chemicals employed by the plaintiff caused the damage complained of herein." We believe the evidence presented by Hughes creates a genuine issue of material fact as to causation.

common law." [***Cipollone v. Liggett Group, Inc.***, 505 U.S. 504, 521, 112 S. Ct. 2608, 2620 (1992)]. Common law damages awards are one form of state regulation and, as such, are "requirements" within the meaning of section 136v. ***See Id.***

***Papas***, 985 F.2d at 518. Thus, "[t]o the extent that state law actions for damages depend upon a showing that a . . . manufacturer's 'labeling or packaging' failed to meet a standard 'in addition to or different from' FIFRA requirements," section 136v(b) pre-empts such claims. ***Id.***; ***accord Wadlington***, 922 S.W.2d at 524.

In deciding what types of claims were pre-empted by FIFRA in ***Wadlington***, this court noted that FIFRA's language indicated that Congress intended to create a broad definition of labeling. ***Id***. (citing U.S.C.A. §§ 136(p), 136(q) (Supp. 1995)). Based upon FIFRA's broad definition of labeling, this Court, like the federal courts before it, concluded that FIFRA pre-empts state-law claims to the extent that such claims are based upon allegations that the manufacturer failed to adequately warn users as to the proper use of its product. ***Wadlington***, 922 S.W.2d at 523-24; ***Papas***, 985 F.2d at 518; ***see also Taylor AG Indus. v. Pure-Gro***, 54 F.3d 555, 561 (9th Cir. 1995); ***Lowe v. Sporicidin Internat'l***, 47 F.3d 124, 129 (4th Cir. 1995); ***Worm v. American Cyanamid Co.***, 5 F.3d 744, 748 (4th Cir. 1993). Courts uniformly have reached this conclusion because, ultimately, failure-to-warn claims challenge the adequacy of the warnings provided on the product's labeling. ***Papas***, 985 F.2d at 519; ***Taylor AG Indus.***, 54 F.3d at 561.

In accordance with these authorities, Hughes concedes in this appeal that the Defendants were entitled to summary judgment as to any claims which were based on allegations of improper labeling or failure to warn. To the extent that his claims are based on affirmative representations by Linda Freeman and Tom Hayes as to the suitability of the products used, however, Hughes insists that his claims are not pre-empted by FIFRA.

### III. Hughes' Claims Against Miles Corporation

As an initial matter, we conclude that any claims which Hughes may have against Defendant Miles Corporation are pre-empted by FIFRA because the only evidence in the record on this matter indicates that Hughes' claims against Miles are based on improper labeling and failure- to-warn theories. In his deposition, Hughes acknowledged that he had no claim that Miles' product, Di-Syston, was improperly designed, tested, or manufactured. Hughes also admitted that he did not rely on any advertising or statements made by Miles beyond those indicated on the product label. When questioned as to the nature of his claims against Miles, Hughes testified that these claims were based on the Di-Syston label's failure to warn potential users against mixing an organophosphate product with a urea-based product. Inasmuch as these claims challenge the adequacy of Di-Syston's label, the claims are pre-empted by FIFRA, and the trial court properly dismissed Miles from this lawsuit.

Hughes criticizes the trial court for extending the scope of the summary judgment proceedings beyond the single basis asserted in the Defendants' motions, *i.e.*, FIFRA pre-emption, and for reaching the merits of Hughes' claims against the Defendants. Determining the issue of whether Hughes' claims were pre-empted by FIFRA, however, necessarily involved an inquiry into the factual bases of Hughes' claims. Accordingly, when presented with Miles' motion for summary judgment, it was incumbent upon Hughes to set forth evidence which contradicted the evidence that Hughes' claims against Miles were based solely on improper labeling and failure-to-warn theories. *See Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993) (when party seeking summary judgment makes properly supported motion, burden shifts to nonmoving party to set forth specific evidence establishing existence of disputed, material facts). At that point in the proceedings, Hughes could not simply rely on the allegations of his complaint. *Id*.; *see also Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 562 n.4 (9th Cir. 1995) (declining to address pre-emption of plaintiffs' design defect claim on appeal from summary

judgment where plaintiffs failed to offer evidence to support such claim).

In fact, Hughes has presented no evidence that any of the products involved in this lawsuit were improperly designed, tested, or manufactured, and on appeal, Hughes acknowledges that his claims "are based upon the representations and recommendations of Linda Freeman and Tom Hayes." This leaves only Hughes' claims for breach of express and implied warranties, breach of fiduciary duty, and negligence for our consideration.

### IV. *Hughes' Breach of Implied Warranty Claims Against the Remaining Defendants*

Authorities addressing the pre-emptive effects of FIFRA on breach of warranty claims generally agree that claims for breach of *implied* warranties, as opposed to breach of *express* warranties, are pre-empted by FIFRA. *Papas v. Upjohn Co.*, 985 F.2d 516, 519-20 (11th Cir.), *cert. denied*, 510 U.S. 913 (1993); *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 562-63 (9th Cir. 1995); *Hopkins v. American Cyanamid Co.*, 666 So. 2d 615, 623 n.4 (La. 1996). In making this distinction, the *Papas* court explained that, whereas implied warranties of merchantability arise by operation of state law, express warranties arise as a result of voluntary, express promises made by the warrantor:

> Express warranties are promises that are made in some, but not all, sales contracts. Express warrantors seek competitive advantage by promising buyers that certain factual representations about their goods are true. Liability for breach of an express warranty has a voluntary quality; it "derives from, and is measured by, the terms of that warranty." [*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525, 112 S. Ct. 2608, 2622 (1992)].
>
> In contrast, implied warranties of merchantability arise by operation of law. . . . Although liability for breach of an *express* warranty may be viewed as "imposed by the warrantor," *Cipollone*, 505 U.S. at [525], 112 S. Ct. at 2622, liability for breach of an *implied* warranty is based on "the agreement, *imposed by law*, to be responsible in the event the thing sold is not in fact fit for the use and purposes intended." *Arcade Steam Laundry v.*

*Bass*, 159 So. 2d 915 (Fla. App. 1964) (emphasis added). In essence, when plaintiffs argue that an implied warranty obligates the seller, plaintiffs acknowledge that the seller did not volunteer for the liability.

FIFRA pre-empts claims based on requirements imposed *by states*. 7 U.S.C. § 136v(b). If [the defendant] were to have liability for breach of an *implied* warranty of merchantability, that liability would not be self-inflicted. Instead, that liability would be based on a requirement imposed by state law. Therefore, to the extent the implied warranty claim depends upon inadequacies in labelling or packaging, FIFRA section 136v pre-empts the claim.

*Papas*, 985 F.2d at 519-20 (emphases in original); *see also Taylor AG Indus.*, 54 F.3d at 562-63; *Hopkins*, 666 So. 2d at 623 n.4; *but see Wright v. Dow Chem. U.S.A.*, 845 F. Supp. 503, 510-11 (M.D. Tenn. 1993).

In accordance with the foregoing authorities, we conclude that Hughes' claims for breach of implied warranty are pre-empted by FIFRA. We reach a different result with regard to Hughes' claims for breach of express warranty, however, because these claims are based on voluntary representations made by Freeman and Hayes which were in addition to or different from FIFRA's labeling requirements.

### V.  Hughes' Breach of Express Warranty Claims Against the Remaining Defendants

Authorities also agree that, to the extent they are based upon inadequacies in labeling or packaging, breach of *express* warranty claims are pre-empted by FIFRA. In *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 562 (9th Cir. 1995), the court held that the plaintiffs' express warranty claim was pre-empted by FIFRA to the extent that the claim was "predicated upon a duty to provide information in addition to or different from that required by FIFRA." In *Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir. 1993), the court similarly held that the plaintiffs' claim for breach of express warranty was pre-empted where the representation

made by the defendants, *i.e.* that corn could be safely planted eleven months following the application of Scepter, was not voluntary and, in fact, was required and approved by the EPA. *See also Lowe v. Sporicidin Internat'l*, 47 F.3d 124, 129 (4th Cir. 1995) ("[A]n express warranty claim based on EPA-approved labeling materials is preempted.").

These opinions also suggest, however, that the result would be different if the plaintiff were able to provide evidence that the defendants conveyed information or made assurances which went beyond the label recommendations. In affirming summary judgment in favor of the defendants, for example, the *Taylor* court noted that the plaintiffs had failed to present probative evidence that the scope of the defendants' assurances varied from or went beyond the label recommendations. *Taylor AG Indus.*, 54 F.3d at 562 n.5. In *Worm*, the court similarly noted that the plaintiffs had failed to present evidence that the defendants made any statements "other than that required and approved by the EPA." *Worm*, 5 F.3d at 749.

In *Hopkins v. American Cyanamid Co.*, 666 So. 2d 615 (La. 1996), the Supreme Court of Louisiana held that a breach of express warranty claim similar to the one brought in this case was not pre-empted by FIFRA. There, the defendants allegedly represented that the insecticide Thimex could safely be used in combination with Direx. This combination discolored, stunted, and killed many of the plaintiffs' cotton plants, and they subsequently sued various defendants for the damage to their cotton crop. In holding that the plaintiffs' claim for breach of express warranty was not pre-empted, the court reasoned:

> [The plaintiffs' express warranty claim does] not relate to labeling
> or packaging, or warning. . . . An express warranty is a guarantee
> which the manufacturer or seller of a good voluntarily undertakes
> and extends to its customer. It is not a warning, nor is it a
> mandatory packaging or labeling condition which constitutes a

state imposed "requirement."

*Hopkins*, 666 So. 2d at 623.

After viewing the evidence in this case, and drawing all reasonable inferences therefrom, we conclude that Hughes has presented sufficient evidence to withstand the remaining Defendants' motions for summary judgment as to Hughes' breach of express warranty claims. As in *Hopkins*, the record in this case contains evidence that the remaining Defendants, through their agents, voluntarily made representations as to their product's effectiveness or suitability on Hughes' cotton crop, and that these representations exceeded or differed from the information contained in the product's label. According to Hughes' deposition testimony, Freeman and Hayes recommended that Hughes use Command on his cotton crop even though Command was not yet labeled for use on cotton. Additionally, Freeman represented to Hughes that it would be "okay" to use Direx in combination with Di-Syston. These representations were voluntarily made and went beyond the information contained in the respective product's labeling information.

### VI. Hughes' Breach of Fiduciary Duty and Negligence Claims Against Tennessee Seeds, Waterfield Grain Company, and Linda Freemen

We likewise conclude that FIFRA does not pre-empt Hughes' claims for breach of fiduciary duty and negligence against Tennessee Seeds, Waterfield Grain Company, and Linda Freeman. Like Hughes' express warranty claims, these claims depend, not upon the information provided on EPA-approved labels, but upon the voluntary representations made by Linda Freeman when she was advising Hughes as to the appropriate chemical program to use on his cotton crop.[3]

---

[3]As Hughes concedes, these claims are pre-empted to the extent that they rely on a failure-to-warn theory because Freeman had no duty to provide warnings other than those contained on FIFRA-approved labels. *Hopkins v. American Cyanamid Co.*, 666 So. 2d 615, 621 (La. 1996).

## *VII. Conclusion*

Those portions of the trial court's judgment (1) dismissing Hughes' claims for breach of express warranty against Tennessee Seeds, Waterfield Grain Company, Linda Freeman, and FMC, and (2) dismissing Hughes' claims for breach of fiduciary duty and negligence against Tennessee Seeds, Waterfield Grain Company, and Linda Freeman are reversed and this cause remanded for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed. Costs of this appeal are taxed to Appellees (with the exception of Miles Corporation), for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)