[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
In this case, the pro se plaintiff has brought suit against the defendant company which she hired to spray her apartment for flies. The company used a product which the plaintiff identifies as "ULD BP." The complaint alleges the plaintiff became ill after each application of the pesticide. The third paragraph of the complaint appears to set out the plaintiff's theory or theories of liability. She states:
 "3. The defendant failed to warn and give adequate instructions using ULD BP insecticide. The plaintiff suffered physically and emotionally. However, the product was misused. The defendant handled it inconsistant (sic) with regulated guidelines by spraying too often saying it was safe. If the defendant gave a warning of the danger by continued exposure injury might not have occurred."
The defendant has filed a motion to dismiss claiming the plaintiff's product liability action is preempted under the Supremacy Clause of the federal constitution by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) at 7 U.S.C. § 136a
et seq. In effect, the defendant claims that the court lacks subject matter jurisdiction to hear the claim.
The defendant characterizes the plaintiff's theory of liability as "apparently grounded on a failure to warn" (page 2 of brief). Relying on that characterization, the defendant has presented an affidavit of its president which indicates that the plaintiff hired the defendant July 15, 1996, and treated her apartment with pesticides Catalyst and ULD BP 100 "in accordance with the Environmental Protection Agency . . . (EPA) approved labels." The plaintiff was warned not to go into her apartment for several hours. The plaintiff requested two more retreatments in July, 1996, which were done with the same pesticides and "per the EPA-approved labels." The plaintiff complaint concedes that the three hour warning was given at the July 15th spraying, the defendant's affidavit is silent as to whether the warning not to reenter was given after the two other treatments but the plaintiff's complaint seems to suggest this when it says in the first paragraph: "Each time plaintiff did this she would end up CT Page 1955 in the hospital" (emphasis added).
The plaintiff argues that FIFRA is a broad based regulatory statute governing the sale, use and labeling of pesticides. Section 136v(b) of the act mandates that a state "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." The argument is that this statutory subsection preempts any state law claim, whether arising from state legislative enactment or common law theory, cf. Cipollone v.Liggett Group, Inc., 112 S.Ct. 2608, 2620-2622 (1992); Erie R.Co. v. Tompkins, 304 U.S. 64 (1938), which "constitutes a `requirement for labeling' in addition to or different from those imposed by FIFRA," pp. 3-4 of brief. The case of Papas v. UpjohnCo., 985 F.2d 516 (CA. 11, 1993), is cited which held that the word "requirements" in § 136v(b) of FIFRA suggests no distinction between positive state legislative enactments and common law decisions, id. p. 518.
This view is based on common sense. That is, since one of the advantages of federal intervention in an area is to address a public concern across state lines with uniformity and regularity for the advantage of manufacturers and consumers, what rational reason can be offered for saying to achieve that desired goal state legislators cannot pass laws conflicting with the federal purpose but state courts can render decisions that do? To ask the question indicates the answer, and on this point, the court agrees with Papas; also see Graves v. Metrex Research Corp. ,14 CLR 574 (Koletsky, J., 1995).
The defendant then cites a series of cases that stand for the proposition that failure to warn claims, that is, claims that really rest on an inadequate labeling or misbranding theory are preempted by FIFRA. (Numerous cases on this topic are collected and discussed in "Preemption — Pesticide Claims," 101 ALR Fed. 887).
In Arkansas-Platte 2 Gulf v. VanWaters Rogers, 981 F.2d 1177
(Ca. 10, 1993), a landowner brought a state common law action against a chemical manufacturer alleging the manufacturer failed to warn of potential environmental risks and hazards to property resulting from use of a chemical. The court examined the "any requirement" language of § 136v(b), held it applied to state statute and common law claims and reaffirmed its previous ruling that the state claim was preempted: "To the extent that state CT Page 1956 tort claims in this case require a showing that defendants' labeling and packaging should have included additional, different or alternatively stated warnings from those required under FIFRA . . . ," id. p. 179. Worm v. American Cyanamid Co.,5 F.3d 744 (Ca. 4, 1993) reached a similar result. In that case, farmers brought suit against a manufacturer seeking to recover damages for alleged injury to a corn crop as the result of the application of herbicide to a prior crop some eleven months before. One of the arguments made by the plaintiff was that the manufacturer could have voluntarily put on additional label warnings relative to the possibility of the harm which it was claimed resulted by the application of the herbicide. The court at p. 748 rejected this argument saying: "Because the language on the label was determined by the EPA to comply with the federal standards, to argue that the warnings on the label are inadequate is to seek to hold the label to a standard different from the federal one." In MacDonald v. Monsanto Co., 27 F.3d 1021 (Ca. 5, 1994), state claims against a manufacturer by a chemical sprayer for the state highway department were also struck down. The claim was made that, under state law, the federally approved labeling did not adequately warn him of the danger presented by the chemical. The MacDonald court cited numerous cases agreeing with its position, id. p. 1025, and rejected as "sophistry" the plaintiff's argument that to permit money damages on the state claim would not require a change of label — the judgment could be paid and the label could remain. The court said large damage awards under state law would have the practical effect of requiring "additional labeling standards not mandated by FIFRA," id., p. 1025. Also see Papas v. Upjohn Co., supra, which involved suit by worker against manufacturers seeking damages for injuries sustained from exposure to herbicides. The court ruled the state claim was preempted because it was based on alleged inadequacies in labeling or packaging; the court understandably held it is for the federal EPA, not a state common law jury, to determine whether labeling and packaging information is incomplete or inadequate, id. p. 519. The sweep of the preemption position is indicated in a case like Wadlington v. Miles, Inc., 922 S.W.2d 520
(Tenn.App., 1995), which states that EPA regulations under the act also ensure a product is not "misbranded." A pesticide would be misbranded if its label contained false or misleading information or did not contain directions for use required for achieving the purpose for which the product is intended, see 7 USCA § 1369(1)(A)2(F), id. at p. 523. In Wadlington,
summary judgment motions were upheld in favor of the manufacturer and the pesticide company hired to apply termite control CT Page 1957 chemicals, the customer suffered termite infestation after the application. The customer claimed the pesticide was ineffective, thus it misstated or misrepresented the product's benefit to consumers, but the court reasoned that this was really an attack on the EPA approved label. Thus, there is a broad definition of labeling under FIFRA.
The defendant argues here that, like the plaintiffs in the cases just mentioned, the "plaintiff's claims implicate labeling concerns." The plaintiff alleges "the defendant failed to warn and give adequate instructions using" . . . the pesticide and that if the defendant gave a warning of the danger by continued exposure injury might not have occurred." The defendant argues that these allegations "necessarily entail a determination of the adequacy of the EPA approved labels," thus the claims here are preempted. The plaintiff's claims cannot be proven or defended without determining whether the labels themselves contained adequate warnings, misrepresentations or whether the label should have contained additional warnings. Graves v. Metrex ResearchCorp. , supra, is cited for the proposition that "to the extent claims require a showing that the labeling or packaging should have included additional, or more clearly stated warnings, those claims are preempted," page 9 of defendant's brief.
The defendant's brief is well argued and the court tends to agree with its preemption argument as regards barring state requirements for labeling or packaging in addition to or different from those required under FIFRA. That is what the act explicitly says at 7 U.S.C. § 136v(a), and labeling has always been the primary focus of FIFRA, see Ruckelhaus v. Monsanto Co.,467 U.S. 986, 991 (1984). FIFRA, as originally adopted, "was primarily a licensing and labeling statute," id. See Wisconsinv. Public Intervenor v. Mortier, 507 U.S. 597, 613 (1991).
If the states can adopt labeling requirements different from or adding to EPA labeling what is the point of having FIFRA. It would be difficult or impossible for manufacturers to uniformly label their products in a federal system comprising fifty states. This is especially so if state "requirements" as to labeling came from state statute and state common law decisions.
The problem the court has with the defendant's position, however, is with its characterization of the defendant's complaint as solely raising claims that would necessitate a showing that there should have been different or additional CT Page 1958 labeling, not required by FIFRA.[1]
In other words, paragraph 3 of the plaintiff's complaint says the "defendant failed to warn and give adequate instructions" regarding the use of the pesticide. The "defendant" here is not the manufacturer. The defendant here is merely a company using the pesticide in the ultimate consumer's home. The language of this pro se plaintiff is inartful, but it could be construed as claiming that the defendant pesticide control company had a duty to warn her directly of the dangers the spraying presented as they appeared on the label. The only mention of warning in the complaint is that she was told not to enter the apartment for three hours after spraying, but the court has no idea whether other warnings appeared on the label and the affidavit presented by the defendant's president does not address that point.
In other words, it is clear that FIFRA contemplates a regulatory role for the states. The statutory section of the U.S. Code preceding the section on labeling states at 7 U.S.C. § 136v(a).
 "(a) A state may regulate the sale or use of any federally registered pesticide or device in the state but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter."
In Villari v. Terminix Intern, Inc., 692 F. Sup. 568 (E.D. Pa., 1988), homeowners sued exterminators not the manufacturer. The court denied the defendant's motion to exclude any evidence on failure to warn. The court said at pages 577-578:
 "The plaintiffs do not assert that their injuries were the result of the defendant's failure to comply with federal regulations regarding the labeling and packaging of defendant's pesticides. Rather, their claim is that the defendant had an obligation, under state common law, to ensure that an appropriate warning reached not only the employees who handled the pesticides, but also the plaintiffs themselves, as the ultimate consumers of the pesticides. See Plaintiff's Response to Defendant's Motion, at 8 (citing Davis v. Wyeth Laboratories, Inc., 399 F.2d 121, 131 (9th Cir. 1968)).
 Recognition of this "failure-to-warn" claim does not conflict with FIFRA's prohibition of state labeling or packaging requirements because the defendant's liability is unrelated to the manner in which the product is labeled or packaged. CT Page 1959
 Under plaintiffs' theory, liability attaches as a result of defendant's failure to relay the warning that FIFRA requires sellers to affix to their product."
Insofar as Wadlington v. Miles, Inc., 922 S.W.2d 520
(Tenn.App., 1995) disagrees with Villari, it is not persuasive. In that case, the homeowners brought suit against the manufacturer and
the exterminator for failure to warn them that the product used was ineffective against termites; after the application termites did damage to the plaintiff's home. The court upheld the granting of summary judgment in the manufacturer's and exterminator's case. It cited Papas v. Upjohn, 985 F.2d 516 (Ca. 11, 1993), which held that 136v(b) of FIFRA preempts failure to warn claims based upon "point of sale signs, consumer notices, or other information or materials that are `unrelated' to labeling and packaging," stating:
 "[A]ny claims that point of sale-signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging . . . Because claims challenging the adequacy of warnings on materials other than the label or package of the product necessarily imply that the labeling and packaging failed to warn the user, we conclude that these claims are also preempted by FIFRA."
Id. at 519.
But Papas was a suit by a worker against the manufacturer seeking damages for injuries sustained from exposure to pesticides. Any point of sale information requirements imposed by the states on the actual manufacturer or other demands that the manufacturer give warnings to users not otherwise contained in the labeling would, for the reasons stated in Papas, as quoted above, directly raise the issue of the adequacy of the label and its contents.
In other words, labeling information would be available to a company or its workers, actually using the product for a customer. The label is on the product they are using and point of sale information to this type of commercial user would implicate FIFRA if such information goes beyond EPA labeling requirements. But the customer would not ordinarily handle the product and have access to labels placed on or attached to the product. Where the claim is merely failure to convey label warnings to the ultimate CT Page 1960 consumer FIFRA is not implicated because the contents of the label, as such, are not in issue.
Where the claim is merely failure to convey any warnings contained in the label then FIFRA is not implicated.
To paraphrase a portion of the test formulated in one state case, one way to determine whether a claim is preempted by FIFRA is whether one could reasonably foresee that the manufacturer in seeking to avoid liability for error would choose to alter product or label. If the manufacturer would alter the label, a state law damage action imposing liability would impose requirements for labeling beyond FIFRA requirements and such actions are preempted. See Jenkins v. Amchem Products,386 P.2d 869 (Kan., 1994). Where the claim is failure to convey warnings on the label to the ultimate consumer by the applicator of a product, not its maker, the manufacturer would not be induced to alter anything since it would not be liable or responsible for any damage to the ultimate consumer. In fact, state requirements to convey the warnings to the ultimate consumer imposed on the non manufacturer applicator of the product would strengthen federal policy of disseminating labeling information. The exterminator, for example, would be encouraged to protect itself from liability by making sure it conveys label information and the manufacturer would pressure the companies using its product to convey the warning to the ultimate consumer to preserve the good will of its product name.
The foregoing is one reason to deny the motion to dismiss the whole action, but there is another reason based on another allegation in the complaint which, at least to the court, does not require a great amount of analysis. In the same third paragraph of the complaint, the plaintiff says: "However, this product was misused. The defendant handled it inconsistant (sic) with regulated guidelines by spraying too often saying it was safe." Certainly, the states under 136v(a) have a right to regulate the use of a pesticide. This can be taken to be a claim that the defendant used the pesticide improperly and did not follow FIFRA labeling guidelines. Allowing a common law cause of action under such circumstances would not impose a requirement adding to or different from EPA guidelines. Now it is true that the defendant president's affidavit states that the pesticide was applied in conformity with EPA approved labels. But there is a distinction between standing to claim a cause of action and the actual validity of a cause of action as is pointed out in the CT Page 1961 commentary to Practice Book § 10-31 in Moller Horton. Vol. 1, Connecticut Practice, cf. Reitzer v. Board of Trustees ofState Colleges, 2 Conn. App. 196, 201 (1984). The validity of the cause of action should not be decided under the guise of standing.
That is, nothing in the Supremacy Clause ousts the jurisdiction of the state courts to determine the validity of a claim which on its face does not interfere with federal policy. Federal preemption may come into play if the state claim is not established as alleged and that issue can be raised at any time because it goes to subject matter jurisdiction. But these questions should be determined in their ordinary course through motions to strike or for summary judgment.
A request to revise should perhaps be filed to separate out the allegations which are federally preempted on their face and other allegations not so preempted on their face can be subject to a summary judgment motion if the defendant can establish non-preempted state claims have no merit. In any event, the motion to dismiss is denied on the present record.
Corradino, J.