666 So.2d 615 (1996)
John C. HOPKINS, et al.
v.
AMERICAN CYANAMID COMPANY, et al.
No. 95-C-1088.
Supreme Court of Louisiana.
January 16, 1996.
*617 J. Michael Hart, Theus, Grisham, Davis, & Leigh; Sharon Woodyear Ingram, for Applicant.
Donald J. Anzelmo, Crawford & Anzelmo; Lawrence S. Edner, for Respondent.
Lewis O. Sams, Counsel for Lewis O. Sams, Amicus Curiae.
CALOGERO, Chief Justice.[*]
We granted writs in this case to decide whether the court of appeal erred in reviewing, then reversing, based solely upon pleadings and affidavits, the district court's denial of a motion for summary judgment, following a fully tried lawsuit, and to decide whether the court of appeal erred in holding that the plaintiffs' claims were pre-empted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 et seq. We find that the court of appeal should not have restricted its fact review to the affidavits and pleadings in support of the motion for summary judgment. And we hold that FIFRA does indeed pre-empt the majority, but not all, of plaintiffs' claims. We reverse in part and remand to the court of appeal for further review.
The plaintiffs in this case, John and Ella Hopkins ("Hopkins") along with Larry and Theresa Ezell ("Ezell") are two farming families in Madison Parish. They brought this lawsuit in order to recover for damages to their 1990 cotton crops caused by the use of the insecticide Thimet along with the herbicide Direx. Thimet is manufactured by the defendant, American Cyanamid Company. Direx is manufactured by Griffin Corporation, a co-defendant at the start of this litigation. Both products are registered with and approved by the Environmental Protection Agency ("EPA") as required by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 et seq.
In 1990 the plaintiffs purchased Thimet and Direx from Madison Farm Supply to assist them in cultivating a cotton crop. Prior to emergence of the crop, Hopkins and Ezell applied a combination of Thimet and Direx. When the cotton plants emerged many were discolored, stunted and later died, thereby reducing the yield for that crop year. Hopkins and Ezell filed suit against American Cyanamid, Griffin, Madison Farm Supply, and Madison Farm Supply's liability insurer, Zurich American Insurance Group. *618 The plaintiffs settled with Griffin, Madison Farm Supply, and Zurich American. American Cyanamid was the sole defendant at trial.
The plaintiffs sought recovery against American Cyanamid on several theories of liability. Specifically, plaintiffs alleged that American Cyanamid is liable for the following acts:
a. in failing to properly warn end users of the combined effect and harm that could result from the combined usage of [Thimet and Direx];
b. in failing to properly warn end users of the danger inherent in the combined use of these products;
c. in failing to properly advise distributors of their product to prohibit sales of these products where it was anticipated that a combined application would be utilized in connection with planting;
d. in improperly designing and manufacturing a chemical product which, if used in conjunction with a competitor's product also recommended for usage in a pre-emergence application on a cotton crop, would result in severe damage to the strand of cotton;
e. in failing to properly label and to thus warn end users of the product of the inherent danger associated with a combined application of the products set forth above; or alternatively, in failing to properly instruct end users on appropriate quantities of their product which could be used in a combination application with a competitor's product as described above;
f. in failing to adequately test the compatibility of these products for use with other products manufactured by competitors, especially where it should be anticipated that the products would or could be sold for a combined application; and
g. other specifics to be shown at the trial of this case.
[the plaintiffs allege that Madison Farm as "an agent of American Cyanamid ... gave advice and made recommendations... to concurrently apply the two products" and that is defective.]
Prior to trial, American Cyanamid filed a motion for summary judgment in which it argued that all of plaintiffs' claims dealt with inadequate warning regarding the use of Thimet and Direx, and were therefore preempted by FIFRA. The trial court granted the motion in part, finding that FIFRA pre-empted some but not all of plaintiffs' claims, those which were "based on the failure of the defendant ... to adequately label its product" or which "would require a holding that American Cyanamid should have provided additional, different or more precise written or printed matter in connection with the sale and distribution of Thimet." This was adverse to American Cyanamid, but neither American Cyanamid, nor the plaintiffs, sought writs to the court of appeal or this Court from that ruling. The case proceeded to trial, and after a four day trial on the merits the jury returned a verdict apportioning 70% fault to American Cyanamid, maker of Thimet, 20% fault to Griffin, the released co-defendant and manufacturer of Direx, 10% fault to Madison Farm Supply, vendor, and 0% fault to the plaintiffs. Hopkins was awarded $95,000.00 and Ezell was awarded $75,000.00.
American Cyanamid appealed and the court of appeal, despite the existence of a fully developed record and a jury verdict, reviewed the trial court's pre-trial partial denial of the defendant's motion for summary judgment on the strength of the affidavits and pleadings in support of the motion appearing in the record, without assessing the evidence submitted at trial. The court of appeal thereupon held that "to the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's `labeling or packaging' failed to meet a standard `in addition to or different from' FIFRA requirements, [FIFRA] pre-empts the claims." The court of appeal then went on to hold in the substance of their ruling on the denial of the motion for summary judgment that the claims in plaintiffs' petition, Article 10(a), (b), (c), and (e) were pre-empted on their face and that the claims in *619 Article 10(d) and (f) when properly analyzed, were also pre-empted under FIFRA.
The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) was initially enacted by Congress in 1947. It was substantially revised in 1972 when control for its enforcement was turned over to the Environmental Protection Agency. The statute was enacted to "regulate the use of pesticides to protect man and his environment; and to extend Federal pesticide regulation to actions entirely within a single State." S.Rep. No. 92-838, 92d Cong.2d Sess., reprinted in 1972 U.S.C.C.A.N. 3993. The statute was also passed in order to:
strengthen the protection of public health and the environment; to increase public confidence that pesticides are approved and used in a manner consistent with current health and safety requirements; to ensure that pesticide users, including agricultural producers, will have access to the effective and affordable products they need on the farm, in the workplace, and at home; [and] to reduce the Federal governments's obligation to pay the costs associated with the cancellation and disposal of pesticides ordered removed from the market.
H.R.Rep. No. 100-939, 100th Cong., 2d Sess. (1988), reprinted in 1988 U.S.C.C.A.N. 3474.
In addition to pursuit of the above goals, FIFRA seeks to provide "a comprehensive regulatory scheme in which the EPA Administrator is responsible for determining whether to register a pesticide and, if so, under what circumstances." Papas v. Upjohn Company, 926 F.2d 1019, 1022 (11th Cir.1991) (Papas I). The Administrator is charged with the responsibility for determining whether a pesticide's benefits outweigh its potential for harm and must balance potential hazards to farmworkers, animals, unborn children and the environment against "the need for food and clothing, and forest products ... and the comfort and health of man." Id. A pesticide can only be registered if the Administrator determines that
when considered with any restrictions imposed on it, the pesticide warrants the proposed claims made for it; its labeling and other materials comply with FIFRA requirements; it will perform its intended purpose without unreasonable adverse effects on the environment; and when used in accordance with common practice, it will not generally cause unreasonable adverse effects on the environment. (Emphasis added).
Id. Thus, among other things labeling and packaging must comply with FIFRA's requirements.
Although FIFRA has been established as a "comprehensive regulatory statute" governing pesticides, Ruckelshaus v. Monsanto Co., 467 U.S. 986, 991-92, 104 S.Ct. 2862, 2867, 81 L.Ed.2d 815 (1984), it is not so comprehensive "as to make reasonable the inference that Congress left no room for the states to supplement it." Wisconsin Public Intervenors v. Mortier, 501 U.S. 597, 613, 111 S.Ct. 2476, 2486, 115 L.Ed.2d 532 (1991). The statute grants the States wide authority to regulate the sale and use of pesticides, but specifically limits their power to regulate pesticide labels.
It is the pre-emptive effect of the statute that is at issue in this case. The relevant portion of the statute is contained in Section 136v which reads as follows:
§ 136v. Authority of States
(a) In General
A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter
(b) Uniformity
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this sub-chapter.
(c) Additional Uses
(1) A state may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this subchapter and if registration for such use has not previously *620 been denied, disapproved, or canceled by the Administrator ...
(emphasis added). Because Section 136v(b) denies to the States the power to regulate the labeling and packaging of pesticides, and since FIFRA pre-empts state law claims premised upon "labeling or packaging in addition to or different from" those required by FIFRA, we must decide in this case whether plaintiffs' claims are in fact based upon labeling and packaging requirements in addition to and different from those required by FIFRA.
With respect to whether Section 136v(b) pre-empts the plaintiffs' state law claims we are guided by the United States Supreme Court's decision in Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), which interpreted a similar pre-emptive provision under the Federal Cigarette Labeling and Advertising Act of 1965, 15 U.S.C. §§ 1331-1339 (1965) (the "1965 Act") and its successor, the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331-1340 (1969) (the "1969 Act"). See Papas v. Upjohn Co., 985 F.2d 516 (11th Cir.1993) (Papas II) and Worm v. American Cyanamid Co., 5 F.3d 744 (4th Cir.1993) (Worm II).
Cipollone involved a suit by the estate of a plaintiff, who ultimately died of lung cancer after years of smoking, against cigarette manufacturers. The suit was premised on state common law for failure to warn of the hazards of smoking. The cigarette manufacturers responded to the suit by arguing that it was pre-empted under both the 1965 Act and the 1969 Act, statutes with provisions similar to that of FIFRA.[2] In construing the pre-emptive phrases within the respective statutes, the Supreme Court held that the phrase "no statement relating to smoking and health" contained in the 1965 Act was a precise and narrow expression of Congress' intent. The word "statement" referred only to positive legislative enactments and did not affect claims under the common law. Cipollone, 505 U.S. at 517, 112 S.Ct. at 2618. However, the Supreme Court went on to hold that the phrase "no requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes," contained in the 1969 Act, was a broad phrase that referred to positive legislative enactments and common law claims. The High Court rejected the plaintiff's argument that the phrase "requirement or prohibitions" did not include common law claims stating:
We disagree; such an analysis is at odds both with the plain words of the 1969 Act and with the general understanding of common law damages actions. The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we have noted in another context, "state regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."
Cipollone, 505 U.S. at 521, 112 S.Ct. at 2620 (footnote omitted) (quoting San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 776, 3 L.Ed.2d 775 (1959)). Admittedly, the Supreme Court held, the 1969 Act did not pre-empt all common law claims, only those which relate to advertising or promotion of cigarettes. In order to determine *621 which claims were pre-empted by the 1969 Act, the Court framed the central inquiry as "whether the legal duty that [formed] the predicate of the common law damages action constitutes a requirement or prohibition ... imposed under State law ... with respect to ... advertising or promotion." Cipollone, 505 U.S. at 523, 112 S.Ct. at 2621. Any claim that did not impose a "requirement or prohibition" on advertising or promotion was not pre-empted.
There appears to be no substantial difference between the language of the Federal Cigarette Labeling and Advertising Act of 1969 and FIFRA. The only difference is that the 1969 Cigarette Labeling Act forbids any "requirements or prohibitions" (regarding advertising and promotion), while FIFRA bars any "requirements" (dealing with labeling and packaging of pesticides).
Both seem equally emphatic: "[n]o requirements or prohibitions" is just another way of saying a "[s]tate shall not impose * * * any requirements." Not even the most dedicated hair splitter could distinguish these statements. If common law actions cannot survive under the 1969 cigarette law, then common law actions for labeling and packaging defects cannot survive under FIFRA.
Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir.1993). Just as the 1969 Act pre-empts state law claims based on advertising and promotion of cigarettes, so too FIFRA pre-empts state law claims based on labeling and packaging of pesticides. When the pre-emptive language of FIFRA is compared with the pre-emptive language of the 1969 Cigarette Act, it is apparent that FIFRA pre-empts state law claims based on "labeling and packaging" of pesticides.
Regarding labeling and packaging, the federal circuits are in near unanimous agreement that FIFRA pre-empts state law claims based on labelling and packaging. See King v. E.I. DuPont De Nemours and Co., 996 F.2d 1346, 1349 (1st Cir.1993); Worm v. American Cyanamid Co., 5 F.3d 744, 747 (4th Cir.1993); MacDonald v. Monsanto Co., 27 F.3d 1021, 1024 (5th Cir.1994); Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir.1993); Taylor AG Industries v. Pure-Gro, 54 F.3d 555, 562 (9th Cir.1995); Arkansas-Platte & Gulf v. Van Waters & Rogers, 981 F.2d 1177, 1179 (10th Cir.1993); Papas II, 985 F.2d at 520. More significantly, however, the federal cases hold that labeling and packaging includes warnings. See, King, supra; Worm II, supra, MacDonald, supra; Shaw, supra; Taylor AG, supra; Arkansas-Platte, supra; and Papas II, supra. Indeed, every federal appellate circuit that has considered the issue in the wake of Cipollone has adopted this view. The only circuit that hasn't so held issued its opinion before the Supreme Court's decision in Cipollone. See, Ferebee v. Chevron Chemical Co., 736 F.2d 1529 (D.C.Cir.1984) (holding that common law claims based upon a failure to warn theory are not "requirements" and therefore, not pre-empted).
These cases thus hold that failure to warn claims are pre-empted by FIFRA and there exists no duty on the part of the manufacturer to give warnings other than the FIFRA approved recitations. The cases have interpreted FIFRA to hold that the label and packaging provided with the insecticide, fungicide, or rodenticide, alone, is sufficient to warn users of the product. A failure to warn claim was specifically examined and addressed in Papas I and II, supra, discussed below.
Papas involved a suit filed by a plaintiff who had been exposed to a pesticide during the course and scope of his employment. The plaintiff filed suit against the manufacturer of the pesticide alleging that the manufacturer was liable for negligence, strict liability, and breach of implied warranty. Papas II, 985 F.2d at 518. Each of these claims, however, was based upon the fact that the defendant "failed to warn users that its product contained certain harmful chemicals and failed to inform them to take appropriate precautionary measures." Id. In reviewing the plaintiff's claims, the Eleventh Circuit held that:
This inquiry is precisely what [FIFRA] forbids. FIFRA denies states the authority to require that pesticide manufacturers conform to a state law standard of care in their labelling and packaging practices. Thus, to the extent that the Papases' *622 claims require a showing that Zoecon's labelling or packaging "should have included additional, or more clearly stated, warnings, those claims are pre-empted."
Id. (emphasis added). Additionally, in Worm II, a case also dealing with a failure to warn claim, the United States Fourth Circuit held that:
Because the language on [a pesticide label is] determined by the EPA to comply with the federal standards, to argue that the warning on the label [is] inadequate is to seek to hold the label to a standard different from the federal one.
Worm II, 5 F.3d at 748. This finding that FIFRA pre-empts state law claims based upon a failure to warn has been adopted by other courts. See, King v. E.I. Dupont, supra; Worm v. American Cyanamid, 970 F.2d 1301, 1307 (4th Cir.1992) (Worm I); Worm v. American Cyanamid (Worm II), supra; MacDonald v. Monsanto Co., supra; Shaw v. Dow Brands, Inc., supra; Taylor AG Industries v. Pure-Gro, supra; and Arkansas-Platte & Gulf, supra. The reasoning supporting these cases is that the presence of an EPA approved label on a registered pesticide reflects the EPA's determination that "those statements are adequate to protect man and the environment." Papas I, supra, 926 F.2d at 1025. And that the enforcement of any duty to warn imposed by States through tort law claims would constitute an impermissible state law "requirement" which is forbidden by FIFRA. To allow a jury to determine that the statements on a label do not provide an adequate warning is equivalent to allowing a jury to do what none of the States may do: regulate the labelling of a federally approved pesticide, so say the federal cases post-Cipollone.
Our decision on a federal statute's pre-emptive effect is governed, in large measure, by the Supremacy Clause of Article VI of the United States Constitution. The Supremacy Clause mandates that the
Constitution, and the laws of the United States ... shall be the supreme law of the land; and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.
(emphasis added). U.S. CONST. ART. VI cl. 2. We are bound by the interpretation and application of a federal statute as given by the United States Supreme Court. Of course, the Supreme Court has not spoken on FIFRA's pre-emptive effect. We are, therefore, at liberty to interpret the federal statute ourselves. We note, however, that since Cipollone, there has developed a strong consensus among the federal courts of appeals as to FIFRA's pre-emptive scope. We are persuaded by the reasoning expressed in the post-Cipollone FIFRA cases. Therefore, we opt to follow the interpretation of the federal circuits and hold that FIFRA's pre-emption does extend to all state law claims premised on failure to warn regarding EPA approved insecticides, fungicides, and rodenticides.
We note of course that the pre-emptive effect of FIFRA is limited to the subject matter of Section 136v(b), namely claims dealing with "labeling and packaging," and warnings. As in Cipollone, any claim not dealing with the subject matter of the statute is not pre-empted.
The central inquiry in the case before us is whether all of the plaintiffs' claims can reasonably be construed as no more than labeling or warning claims. The large majority of the claims are premised upon improper labeling and/or failure to warn. Article 10(a) of plaintiffs' petition alleges that American Cyanamid failed to properly warn end users. Article 10(b) claims that there was no proper warning to end users of the combined effects of Thimet and Direx. Article 10(c) asserts that American Cyanamid failed to advise distributors to prohibit joint sales, and Article 10(e) charges American Cyanamid with failing to properly label their product to warn end users of the dangers of a combined application. In one form or another they attack the sufficiency of the Thimet label and packaging. All of these claims are therefore pre-empted by FIFRA. Thus, they were properly dismissed in the court of appeal.
The court of appeal was also correct in dismissing the claims under Articles 10(d) and (f) of plaintiffs' petition. Article 10(d) addresses manufacturing a chemical *623 and recommending its usage in pre-emergence application on cotton crops, in conjunction with a competitor's product. Article 10(f) addresses not testing the compatibility of their product for use with other products manufactured by competitors where it should be anticipated that the products would or could be sold for a combined application. Regarding these two claims, the court of appeal noted:
[These claims are] predicated upon a failure to warn or inadequate warning theory. [They] suggest that the defendant should have known of the alleged dangers of a combined use of Thimet and Direx, and, thus, should have communicated these warnings [to the plaintiffs].
Hopkins v. American Cyanamid Co., 95-26721 (La.App.2d Cir. 4/5/95), 653 So.2d 196, 201. Plaintiffs argue that the claims are not pre-empted. We disagree. The court of appeal was correct. The claims are basically failure to warn claims and they are pre-empted. As the court of appeal noted, the plaintiffs essentially complain that American Cyanamid did not convey to them information that a combination of Thimet and Direx is harmful to cotton. Yet, once an EPA-approved label is affixed to an insecticide, fungicide, or rodenticide, "the duty to warn is satisfied." Papas II, 985 F.2d at 519. A manufacturer is under no obligation to provide additional warnings other than those contained in the EPA-approved label.[3] Any claim that additional warnings such as "point-of-sale signs, consumer notices, or other informational materials" were needed or that such materials "failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging." Id. and Taylor AG Industries v. Pure-Gro, 54 F.3d 555, 561 (9th Cir.1995). The court of appeal properly found that these claims, Articles 10(d) and (f) are pre-empted.
However, the plaintiffs have presented two claims that do not invoke FIFRA's pre-emptive provisions as they do not relate to labeling, packaging, or warnings: that "Thimet when used alone ... could cause crop damages," and that Madison Farm Supply, acting as an agent of American Cyanamid, warranted that Thimet could safely be used in combination with Direx. Plaintiffs' Brief at 10. These are essentially defective product and express warranty claims, respectively. These claims are not pre-empted by FIFRA as they do not relate to labeling or packaging, or warning. A defective product claim, brought under the Louisiana Products Liability Act (R.S. 9:2800.51 et seq.) and does not relate to labelling or warning. An express warranty is a guarantee which the manufacturer or seller of a good voluntarily undertakes and extends to its customer. It is not a warning, nor is it a mandatory packaging or labeling condition which constitutes a state imposed "requirement."[4]
The plaintiffs contend that these defective product and warranty claims are contained in their petition. The defendant says they are not. We need not resolve this dispute because evidence supporting these claims was introduced without objection at trial.[5] Unobjected to evidence of issues not contained in the pleadings, which is admitted at trial, serves to enlarge the pleadings. Such evidence is "treated in all respects as if [it] had been raised by the pleading[s]." La. Code Civ.Proc. art. 1154; See also, First National Bank of Abbeville v. Greene, 612 So.2d 759 (La.App. 3d Cir.1992) and Herrell v. Herrell, 594 So.2d 943 (La.App. 3d Cir. *624 1992). We are unable to find in the record evidence of any contemporaneous objection to the admission of evidence supporting these claims, nor has American Cyanamid directed our attention to any such contemporaneous objection.
The court of appeal did not review the record to assess the quality, quantity, and character of proof regarding the plaintiffs' express warranty claim.[6] See, Hopkins, 653 So.2d at 201. This is one of the two matters which prompted us to grant this writ. The court of appeal decided this issue, not based upon the record, but upon the pleadings and evidence presented in support of the pre-trial motion for summary judgment. This was erroneous for the following reason: once a case is fully tried, the affidavits and other limited evidence presented with a motion for summary judgment later denied by the district courtare of little or no value. Appellate courts should not rule on appeal after a full merits trial on the strength alone of affidavits in support of a motion for summary judgment that was not sustained in the district court. In such cases, appellate courts should review the entire record. Further, this "belated" ruling on the motion for summary judgment, essentially a no cause of action exception[7], denied the plaintiffs an opportunity to amend their petition in a timely manner. See, La.Code Civ.Proc. art. 934 (judgment granting the exception shall allow amendment within delay allowed by the court).
For these reasonsexpansion of the pleadings through the introduction of unobjected to evidence and the court of appeal's failure to review the entire record of the trialwe accept that the pleadings have been amended to conform to the evidence. The plaintiffs are entitled to a record review of their favorable district court judgment with the benefit of the entire record.
It is the normal practice of this court not to rule upon issues that have not been first examined and ruled upon in the court of appeal. Therefore, we remand this case to the court of appeal to determine whether the plaintiffs have proved the existence of an express warranty or defective product claims. Only after the court of appeal makes that determination will it be in a position to reverse or affirm the district court's judgment in favor of plaintiffs.
The judgment of the court of appeal insofar as it resolves that the majority of the claims are pre-empted by FIFRA is affirmed. Otherwise, the judgment is reversed and the case is remanded to the court of appeal for further consideration in light of this opinion.

DECREE
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[*] Judge Burrell Carter, Court of Appeal, First Circuit, sitting by assignment in the vacancy created by the resignation of Justice James L. Dennis, now serving on the United States Court of Appeals, Fifth Circuit.

Victory, J., not on panel. See Rule IV, Part 2, § 3.
[2] Section 5 of the Federal Cigarette Labeling and Advertising Act of 1965 provides that:

(a) No statement relating to smoking and health, other than the statement required by Section 1333 of this title shall be required on any cigarette package.
(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter. (emphasis added).
Section 5(b) of the Public Health Cigarette Smoking Act of 1969 provides that:
No requirement or prohibition based on smoking and health shall be imposed under state law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this act. (emphasis added).
[3] A label, under FIFRA, Section 136(p), is defined as follows:

[All] written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers [and] all other written, printed, or graphic matter(A) accompanying the pesticide or device at any time; or (B) to which reference is made on the label or in literature accompanying the pesticide or device.
[4] Implied warranties, on the other hand are pre-empted by FIFRA. As the federal Eleventh Circuit held: they are creations of state law; "the implied warranty of merchantability ... unless waived or modified is always implied in a sale of good by a merchant...." Papas, 985 F.2d at 519-20.
[5] The plaintiffs contend that the record shows that "American Cyanamid actually recommended" that farmers take the advice of Madison Farm Supply and that Madison Farm Supply recommended that the plaintiffs apply both Thimet and Direx to their crops. Plaintiffs' Brief at 10.
[6] It is not clear from the court of appeal opinion whether its review of the defective product claim was based upon the record or from the evidence in support of the motion for summary judgment. See, Hopkins, 653 So.2d at 201. Since a defective product claim is not a warning claim, it too should be examined with benefit of the record.
[7] The reason for the summary judgment grant by the court of appeal was that the law, FIFRA, did not allow for recovery on the plaintiff's claims.