# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 24-357

ANNA BEAUDOIN

VERSUS

WALMART INC., ET AL

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 267,347
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**********

### ELIZABETH A. PICKETT
### CHIEF JUDGE

**********

Court composed of Elizabeth A. Pickett, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AMENDED AND AFFIRMED AS AMENDED.**

Jerry L. Lavespere, Jr.
Jerry L. Lavespere, Jr. "A Professional Law Corporation"
1805 Jackson Street
Alexandria, LA 71301
(318) 443-9926
COUNSEL FOR PLAINTIFF- APPELLEE:
    Anna Beaudoin

**Gregory B. Odom, II**
**Chadwick, Odom, & Stokes, LLC**
**P. O. Box 12114**
**Alexandria, LA 71315**
**(318) 445-9899**
**COUNSEL FOR DEFENDANT- APPELLANT:**
    **Wal-Mart Louisiana, LLC**
    **Walmart Inc.**

**PICKETT, Chief Judge.**

Following a jury trial, the trial court signed a judgment in the amount of $150,000.00 in favor of Anna Beaudoin against Wal-mart Louisiana, LLC and Walmart Inc. (Walmart) for damages she suffered following a Walmart employee's allegations that the twenty-dollar bills she attempted to use to pay for a purchase were counterfeit. Walmart appealed the judgment. For the reasons discussed below, we affirm the jury's assessment of liability but reduce its damage award.

## FACTS

On February 2, 2019, Anna Beaudoin visited the Walmart Neighborhood Market in Pineville to purchase soft food items for her fiancé, Kayle Allen, whose wisdom teeth had been removed that day. She attempted to complete her purchases using a food-stamp card and cash at a self-service checkout register. The register accepted the food-stamp card, but the balance on the card was insufficient to complete her purchases. Ms. Beaudoin then attempted to use two twenty-dollar bills (the bills) to pay the difference, but the register would not accept the bills. A Walmart employee supervising the self-service checkout registers also attempted to insert the bills into the register with the same result. The employee suggested Ms. Beaudoin go to Customer Service to exchange the bills for other bills and return to complete her purchase. Ms. Beaudoin testified she returned the bills to her wallet as she walked to Customer Service. Ms. Beaudoin also testified the employee at the self-checkout registers did not look at the bills when she attempted to get the machine to accept them, and no Walmart employee looked at the bills.

An employee in Customer Service informed Ms. Beaudoin Walmart does not exchange money but suggested she could exchange the bills at a bake-sale fundraiser being conducted in the parking lot outside the store. Ms. Beaudoin acted on the suggestion and purchased a bag of cookies for $2.00 at the fundraiser and

exchanged the bills for different bills. Ms. Beaudoin then returned to the store, completed her purchase, and left the store.

Kyle Sellers, an off-duty state trooper, was at the fundraiser to support his son's baseball team. He testified a Walmart employee approached him after Ms. Beaudoin left Walmart and informed him Ms. Beaudoin used counterfeit bills to make her purchase and money exchange at the fundraiser. He explained the Walmart employee believed Ms. Beaudoin's bills were counterfeit because the self-check register would not accept them. Trooper Sellers then approached Ms. Beaudoin as she was in her vehicle preparing to drive home. He related the issue with the bills as told to him by the Walmart employee and asked Ms. Beaudoin to return to Walmart with him to resolve the issue. Ms. Beaudoin complied with his request. Trooper Sellers testified he did not handle money for the bake sale and did not see the bills until the Walmart employee reported the bills Ms. Beaudoin's used were counterfeit.

When Ms. Beaudoin and Trooper Sellers returned to Walmart, the Walmart employee who reported Ms. Beaudoin as using counterfeit bills met them in the vestibule of the store and instructed Ms. Beaudoin to sit on a bench. Sellers and the Walmart employee kept Ms. Beaudoin from leaving Walmart for approximately two hours. During that time, Ms. Beaudoin was required to sit in full view of the public in the midst of customers and employees while Trooper Sellers and Walmart employees tried to determine how to proceed. Eventually, Trooper Sellers contacted the Pineville Police Department and reported the Walmart employee's allegation that Ms. Beaudoin attempted to negotiate counterfeit bills to make her purchase at Walmart, then used the counterfeit bills to make a purchase and bill exchange at the fundraiser. Trooper Sellers testified he thought Walmart's employees were more knowledgeable than him about

2

counterfeit bills because they regularly deal with cash. He explained he contacted the Pineville Police Department after Walmart's employees could not determine whether the bills were counterfeit.

Upon arrival at Walmart, the Pineville police officer, Corporal Jacob Hood,[1] handcuffed Ms. Beaudoin with her hands behind her back and patted her down. The pat down was conducted in public with a "crowd of people" around. When conducting the pat down, Corporal Hood made Ms. Beaudoin, who was eight months pregnant, lift her blouse which exposed her stomach to the public. Ms. Beaudoin testified she had never been in trouble before and was "terrified" and crying. Corporal Hood placed Ms. Beaudoin into his police car to transport her to the police station. Ms. Beaudoin testified she sat in the police car for approximately thirty minutes before Corporal Hood released her to go home. Corporal Hood testified he released her because he and his superior officer could not determine whether the bills were counterfeit and decided to release Ms. Beaudoin while the bills were tested at the crime lab to determine if they were counterfeit. Ultimately, the bills were determined not counterfeit and returned to Ms. Beaudoin.

While detained, Ms. Beaudoin repeatedly reported to Trooper Sellers and the Walmart employee her fiancé had gotten the bills from the Chase Bank office near Walmart which he withdrew from the bank the previous day and asked them to check with the bank. No one acted on her request.

Ms. Beaudoin filed suit against Walmart and Trooper Sellers alleging claims for defamation, false imprisonment, false arrest, intentional and negligent infliction of emotional distress, conversion, illegal search, and negligence. Trooper Sellers

---

[1] At trial, Corporal Hood was employed by the Parish Sheriff's Office. When investigating whether Ms. Beaudoin negotiated counterfeit bills, he was a patrol officer with the Pineville Police Department.

and Walmart filed motions for summary judgment, seeking to have Ms. Beaudoin's claims against them dismissed. After conducting a hearing on each motion, the trial court dismissed Ms. Beaudoin's claims against Trooper Sellers and dismissed all of her claims against Walmart, except her claim for general negligence.

On October 24-25, 2023, Ms. Beaudoin tried her claims against Walmart before a jury. The jury returned a verdict that Walmart was negligent and its negligence caused Ms. Beaudoin damages. The jury awarded her damages totaling $150,000.00 for past and future mental anguish. Walmart appealed.

## ASSIGNMENTS OF ERROR

On appeal, Walmart assigns four errors with the trial court proceeding:

1) The trial court committed legal error by not providing the jury with an instruction that the chain of causation would be broken if they found the Pineville Police Department conducted an independent investigation.

2) The trial court committed legal error by including La.Code Crim.P. art. 215 as Jury Instruction No. 14, which relates to the claim of false imprisonment that was summarily dismissed prior to trial.

3) The trial court committed legal error by denying Walmart's Motion for Summary Judgment in part and failing to dismiss Plaintiff's claim for general negligence.

4) The jury abused its discretion by awarding $150,000.00 for past and future mental anguish.

## DISCUSSION

### *Summary Judgment*

We begin our discussion with Walmart's third assignment of error because if we find merit in this assignment, we need not address the remaining assigned errors. Pursuant to *Hopkins v. American Cyanamid Co.*, 95-1088 (La. 1/16/96), 666 So.2d 615, appellate review of a trial court's denial of summary judgment is

4

treated differently after a case has been fully tried and the denial is assigned as error on appeal. The supreme court explained in *Hopkins*, *Id.* at 624:

> [O]nce a case is fully tried, the affidavits and other limited evidence presented with a motion for summary judgment—later denied by the district court—are of little or no value. Appellate courts should not rule on appeal after a full merits trial on the strength alone of affidavits in support of a motion for summary judgment that was not sustained in the district court. In such cases, appellate courts should review the entire record.

Walmart asserts the trial court erred in denying its motion for summary judgment with respect to Ms. Beaudoin's negligence claims, arguing her negligence claims were subsumed with her claim for defamation that was dismissed on Walmart's motion for summary judgment. Ms. Beaudoin counters her claims for negligence are based on Policies and Procedures adopted by Walmart and, therefore, were not subsumed by the dismissal of her defamation claim against Walmart. Louisiana courts recognize a defendant's failure to abide by its own policies and procedures can serve as the basis for a negligence claim. *LaGrappe v. Progressive Sec. Ins. Co.*, 14-720 (La.App. 3 Cir. 12/23/14), 154 So.3d 1263, *writ denied*, 15-200 (La. 4/17/15), 165 So.3d 71.

In *Kennedy v. Sheriff of East Baton Rouge*, 05-1418 (La. 7/10/06), 935 So.2d 669, the supreme court determined when a plaintiff sues a defendant for defamation and the defendant successfully establishes it is entitled to a conditional or qualified privilege based on La.Code Crim.P. 215, the plaintiff's claim for negligence is subsumed within her defamation claim. The supreme court addressed the issue in a footnote, stating:

> We note, incidentally, that in a case such as this one, where a conditional privilege is found to exist, the negligence standard that is part of plaintiff's prima facie case is logically subsumed in the higher standard for proving knowing falsity or reckless disregard as to truth or falsity. Therefore, the negligence analysis drops out of the case, for if the plaintiff is incapable of proving the knowing falsity or reckless disregard as to truth or falsity necessary to overcome the privilege, it

is of no consequence that he or she might be able to prove the lesser standard of negligence.

*Kennedy*, *Id*. at 687-88, n.19.

The supreme court clearly differentiated the negligence standard that is part of a plaintiff's prima facia case for defamation in cases involving a conditional privilege from the standard applicable to other negligence claims a plaintiff may have against a defendant. No conditional privilege exists in this case because Ms. Beaudoin's negligence claims are based on Walmart's failure to abide by its own Policies and Procedures. Accordingly, this note does not apply.

Ms. Beaudoin presented the testimony of Dan Regan, a Walmart Corporate Executive, who serves as Market Asset Protection Manager. Mr. Regan is responsible for the safety and security of seventeen stores, but the Pineville Neighborhood Walmart is not one of those stores. Mr. Regan's duties include the elimination of theft and fraud with the goal of driving profitability and reducing operational shrinkage. Mr. Regan testified Walmart's Policies and Procedures are aimed at protecting Walmart's assets which include its employees, customers, as well as inventory, etc. He stated Walmart's Policies and Procedures apply to all Walmart stores, including the Pineville Neighborhood Walmart.

Mr. Regan identified a number of Policies and Procedures which were violated during Ms. Beaudoin's detention at Walmart. For example, only an authorized associate can initiate an investigation and accuse a customer of a crime; however, the evidence does not establish an authorized associate was on duty when Ms. Beaudoin was detained. Mr. Regan agreed one purpose of this policy is to prevent the wrongful detention of customers.

Mr. Regan further testified Walmart has a policy that a store can only refuse to accept cash from or exchange cash for a customer after a "trend" has been

6

established regarding a customer's use of counterfeit money and an authorized associate has determined a variance from its general Policies and Procedures on the issue is warranted. He acknowledged no such trend had been established as to Ms. Beaudoin. He also testified Walmart's stop and detention of Ms. Beaudoin violated Walmart's general Policies and Procedures if Ms. Beaudoin was detained by an unauthorized associate who did not investigate Ms. Beaudoin and the situation at hand before stopping her, did not write a report on the detention and investigation, and did not take the necessary steps to obtain and preserve evidence relevant to the issue at hand. Walmart did not present any evidence at trial showing it investigated Ms. Beaudoin's detention or the identity of the employee who alleged Ms. Beaudoin negotiated counterfeit bills and explained the employee died before trial.

Mr. Regan explained any detention should be "reasonable" and should not exceed the maximum detention period provided by state law. He acknowledged Trooper Sellers testified a Walmart employee initiated the detention. He also agreed the detention violated Walmart's Policies and Procedures if a Walmart employee initiated the detention and it last lasted more than one hour as provided in La.Code Crim.P. art. 215(A)(1). Mr. Regan further testified any Walmart employee who suspects a customer of using counterfeit money should report the issue to an Asset Protection Associate who should conduct an investigation. Mr. Regan identified additional violations of Walmart's Policies and Procedures that occurred with Ms. Beaudoin's detention.

Walmart sought to distinguish much of Mr. Regan's testimony on direct examination by relying on Trooper Sellers' testimony and the testimony of Corporal Hood, to argue Trooper Sellers, not a Walmart employee, initiated the investigation, and he should have prepared a report on the investigation. Walmart further argued its Policies and Procedures regarding detention do not apply here

because Trooper Sellers initiated the detention and contacted the Pineville Police Department.

Corporal Hood testified Trooper Sellers reported to him that Ms. Beaudoin attempted to use counterfeit bills to purchase cookies at the bake sale. His testimony on this issue was at odds with Trooper Sellers' testimony. Trooper Sellers testified a Walmart employee approached him at the bake sale after Ms. Beaudoin left the store and reported Ms. Beaudoin used counterfeit bills to make her purchase and bill exchange at the bake sale.

Walmart also pointed out some differences between Ms. Beaudoin's deposition testimony and her trial testimony. When cross-examining Ms. Beaudoin, counsel for Walmart noted she did not mention in her deposition Trooper Sellers told her a Walmart employee accused her of using counterfeit bills but testified at trial Trooper Sellers told her a Walmart employee made the accusation to him. Ms. Beaudoin explained she was nervous at her deposition, in part, because she had to miss work and lose income which created a financial hardship for her and Mr. Allen.

Having reviewed the record and considered the evidence presented at trial, we find genuine issues of material fact existed as to whether Walmart was negligent in violating some of its Policies and Procedures. Accordingly, the trial court did not err in denying Walmart's motion for summary judgment on the issue of negligence.

*Jury Instructions*

Walmart assigns two errors with the trial court's jury instructions. It asserts the court erred in refusing to provide one instruction to the jury on causation and providing another instruction on La.Code Crim.P. art. 215 over its objection. Pursuant to La.Code Civ.P. art. 1792(B), the trial court must instruct jurors on the

law applicable to the case before them. *Adams v. Rhodia, Inc.*, 07-2110 (La. 5/21/08), 983 So.2d 798. When preparing jury instructions, the trial court must insure the instructions are unlikely to confuse the jury and, in doing so, may decide what law is and is not applicable. *Id.* Jury instructions should "fairly and reasonably point out the issues" and "provide correct principles of law." *Id.* at 804. Trial courts have much discretion in preparing jury instructions, but they must take care to insure the instructions provide the jury with the correct law. *Dobyns v. Univ. of Louisiana Sys.*, 18-811 (La.App. 1 Cir. 4/12/19), 275 So.3d 911, *writ denied,* 19-950 (La. 9/24/19), 278 So.3d 977. If an instruction was incorrect and the error likely contributed to the jury's verdict, the verdict must be set aside. When reviewing jury instructions, "the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice." *Adams*, 983 So.2d at 804.

*Causation*

Walmart argues the trial court legally erred when it refused to instruct the jury that the chain of causation between Walmart's actions and Ms. Beaudoin's damages was broken when the Pineville Police Department conducted an independent investigation following Walmart's report that Ms. Beaudoin attempted to pay for her purchases with counterfeit twenty-dollar bills. Walmart requested the trial court to instruct the jury: "An investigation of a crime or potential crime by a police force breaks the chain of causation between the report of the crime and the plaintiff's arrest and subsequent damages[,]" citing *Kennedy*, 935 So.2d at 687-88, n.19, as support for the proposed instruction. The trial court refused to include the proposed instruction.

Louisiana Code Criminal Procedure Article 215(A)(1), provides:

> A peace officer, merchant, or a specifically authorized employee or agent of a merchant, may use reasonable force to detain a person for questioning on the merchant's premises, for a length of time, not to exceed sixty minutes, unless it is reasonable under the circumstances that the person be detained longer, when he has reasonable cause to believe that the person has committed a theft of goods held for sale by the merchant, regardless of the actual value of the goods. The merchant or his employee or agent may also detain such a person for arrest by a peace officer. The detention shall not constitute an arrest.

In *Kennedy*, 935 So.2d 669, a customer tendered a $100 bill at a drive-thru restaurant to pay for his order, and an employee reported the customer to the police for negotiating suspected counterfeit money. The police responded while the customer was waiting in the drive-thru for his order and immediately took over the investigation. The supreme court determined the plaintiff could not prove his claim for malicious prosecution under La.Code Crim.P. art. 215 because the evidence established:

> [T]he employees of [the defendant merchant] merely reported their suspicions of counterfeit currency to the Sheriff's Office. When the deputies arrived at the restaurant, [the defendant's] employees pointed out the vehicle from which the one hundred dollar bill had been tendered and handed over the suspect currency. At that point, the involvement of [the defendant's] employees ceased, and the East Baton Rouge Parish officers took over, conducting their own examination of the currency before approaching the plaintiff. Given these facts, which were not controverted by plaintiff, it is clear that any chain of causation regarding plaintiff's subsequent detention was broken. The decision to detain plaintiff was made by the independent actions and investigation of the Sheriff's Office. *See, Banks v. Brookshire Brothers Inc.,* 93–1616 (La.App. 3 Cir. 6/01/94), 640 So.2d 680. Therefore, because plaintiff cannot establish that he will be able to provide factual support sufficient to satisfy his burden of proving legal causation, an essential element of a malicious prosecution action, that claim (to the extent it was stated) was properly dismissed.

*Id*. at 690-91, n.20.

There is no comparison between the facts in *Kennedy* and the facts here. A Walmart employee accused Ms. Beaudoin of negotiating counterfeit bills. As

discussed above, Ms. Beaudoin testified the self-checkout register employee did not examine the bills and no other Walmart employee saw the bills after she returned them to her wallet. Ms. Beaudoin's uncontradicted testimony is the only evidence on this issue. Moreover, the evidence established Walmart's employee was present and involved in the investigation until Corporal Hood released her to go home. Therefore, the directive in *Kennedy* has no application here, and the trial court did not err in refusing to give Walmart's requested jury instruction.

Furthermore, Ms. Beaudoin's claims against Walmart are for its negligence in failing to abide by its own Policies and Procedures. Mr. Regan's testimony established that a determination of whether Walmart violated some of its Policies and Procedures requires consideration of Louisiana law. For example, its Policies and Procedures provide a detention should not exceed the maximum detention period allowed by state law unless reasonable cause exists for the prolonged detention. Thus, La.Code Crim.P. 215(A)(1), which limits the detention of a person suspected of committing a theft to sixty minutes, must be considered when determining whether Walmart violated that provision and whether it was negligent in doing so.

For these reasons, *Kennedy*, 935 So.2d 669, does not apply to Ms. Beaudoin's claims, and the trial court did not err in refusing to give Walmart's causation instruction to the jury.

### Louisiana Code of Criminal Procedure Article 215

In its second assignment of error, Walmart urges the trial court erred in providing a jury instruction on La.Code Crim.P. art. 215 because it provides a cause of action for false imprisonment, not negligence. Additionally, it argues the instruction misled the jury into believing liability could be established based on evidence of a detention exceeding sixty minutes.

11

Ms. Beaudoin alleged Walmart breached its Policies and Procedures and general obligations it owes to its customers. She asserted Walmart committed twenty breaches of its Policies and Procedures, including: 1) excessive and unreasonable detention under the circumstances; 2) embarrassment, belittling, exposing, and humiliating her in public; 3) failure to investigate her explanation that the bills were not counterfeit; 4) no trained personnel were on duty to handle the situation; 5) no means of determining the validity of the alleged counterfeit bills such as bill markers; and 6) conducting the investigation in public rather than a secluded area.

Louisiana Code of Criminal Procedure Article 215 delegates quasi-police powers to peace officers, merchants, and specifically authorizes employees or agents of merchants to combat shoplifting and grants civil and criminal immunity from liability for detaining someone for shoplifting when they have reasonable cause to believe a theft of goods occurred. *Thomas v. Schwegmann Giant Supermarket, Inc.*, 561 So.2d 992 (La.App. 4 Cir. 1990). The detention period is limited to sixty minutes. La.Code Crim.P. art. 215(A)(1).

Based on Mr. Regan's testimony, Walmart's Policies and Procedures adopt that limitation, as well as the requirement that a trend must exist, i.e., "reasonable cause," to detain a person suspected of using counterfeit money. For these reasons, we cannot say the trial court's jury instruction on La.Code Crim.P. art. 215 misled the jury or prevented it from dispensing justice and find this assignment lacks merit.

***Damages***

In its last assignment of error, Walmart contends the jury's award of $150,000.00 in damages is excessive and urges her award for damages should not exceed $40,000.00.

In *Barber Brothers. Contracting Co., LLC v. Capitol City Produce Co., LLC*, 23-788 (La. 12/19/24), _ So.3d_, 2024 WL 5162733, our supreme court addressed appellate review of general damage awards restating the fact that reasonable jurors often disagree about the amount of general damages warranted in specific cases. The court further explained:

> General damage awards must not be "obviously the result of passion or prejudice, and they [should] bear a reasonable relationship to the elements of the proved damages." *Youn*, 623 So.2d at 1261. "To reduce the trier of fact's award, [a reviewing court] must conclude from the entirety of the evidence viewed in the light most favorable to the plaintiff, that a rational trier of fact could not have fixed the awards of general damages at the level set by the [fact finder] or that this is one of those 'exceptional cases where such awards are so gross as to be contrary to right reason.'" *Davis v. Hoffman*, 00-2326, p. 3 (La.App. 4 Cir. 10/24/01), 800 So.2d 1028, 1030 (quoting *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 331 (5th Cir. 1987); *see also Youn*, 623 So.2d at 1261. In summary, to find abuse of discretion warranting the disturbance of a factfinder's award of general damages, a reviewing court must find that the award is "so high or so low in proportion to the injury . . . that it shocks the conscience." *Baack v. McIntosh*, 2020-1054 (La. 6/30/21), 333 So.3d 1206, 1215 (quoting *Riley v. Maison Orleans II, Inc.*, 01-0498, p. 11 (La. App. 4 Cir. 9/25/02), 829 So.2d 479, 487).

*Id*. at 3. The court also clarified that when reviewing general damage awards, appellate courts must consider prior damage awards "as a starting point[]" and also consider those awards in light of the circumstances of the case being reviewed. *Id.* at 9 (quoting *Pete v. Boland Marine & Mfg. Co., LLC*, 23-170, p. 9 (La. 10/20/23), 379 So.3d 636, 643).

After being detained, Ms. Beaudoin called Mr. Allen to meet her at Walmart. She and Mr. Allen described for the jury the effect Walmart's actions had on her. Ms. Beaudoin explained when she returned to the Walmart store with Trooper Sellers, a Walmart employee directed her to sit on a bench near the entrance of the store. She was then instructed to follow Trooper Sellers and the Walmart employee to an area in front of the Customer Service desk where she remained until Corporal

Hood arrived. During that time Trooper Sellers and the Walmart employee examined the bills with a regular light and tried without success to find a counterfeit bill marker to check the bills. Trooper Sellers, the reporting Walmart employee, and some other Walmart associates went into a room behind the Customer Service desk. Ms. Beaudoin was left in public view with other Walmart employees. When Trooper Sellers and the Walmart employees returned, Trooper Sellers informed her, the police were on the way. Upon arrival, Corporal Hood of the Pineville Police Department handcuffed her. She called Mr. Allen at that time.

Ms. Beaudoin remained in open view of the public while at Walmart. She had to raise her blouse in a crowd of about thirty people which she testified consisted of Walmart employees and customers who had gathered around her. She felt "terrified" and began crying. Ms. Beaudoin's pregnancy was high risk, and she explained that being eight months pregnant in such a high stress situation, caused her to be concerned for her unborn baby's safety. Ms. Beaudoin testified she had never been in trouble and Corporal Hood told her she would go "down for a felony." Additionally, Ms. Beaudoin was in nursing school at the time, and Trooper Sellers told her she could forget about becoming a nurse.

Corporal Hood walked Ms. Beaudoin out of Walmart to his vehicle to transport her to the police department. When she exited Walmart, Ms. Beaudoin's hands were handcuffed behind her back. She testified ball players at the bake sale pointed at her and stated they had never seen anyone arrested. Corporal Hood could not determine the bills were counterfeit and released Ms. Beaudoin before taking her to the station. Mr. Allen drove her home from Walmart because she was holding her stomach and was too stressed to drive. Ms. Beaudoin described the ordeal as lasting three hours. Mr. Allen's testimony on this issue was similar. When Ms. Beaudoin went home, she remained upset and crying. She had bruises

14

and pain on her wrists from the handcuffs. She would not shop for a long time after the incident. She no longer uses or carries cash. She also does not use shelf-checkout registers any more.

Ms. Beaudoin testified she sought treatment for anxiety and mental anguish and acknowledged she had been treated for anxiety before being stopped at Walmart. This prior treatment has no bearing on her damage award as a defendant in a negligence action "takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La.1993).

Ms. Beaudoin saw three different doctors after the Walmart incident. In June 2021, she saw a doctor for her pre-existing ADHD. She reported being depressed, anxious, and unable to focus. She also saw Dr. Gerald Leglue, reporting back pain and the Walmart incident. Dr. Leglue noted the history she related of the Walmart incident and opined she possibly had PTSD. He referred her to Dr. James Quillin, for a psychological evaluation. Ms. Beaudoin thought she followed up on the referral to Dr. Quillin, but he died before trial. She explained she was unable to obtain any medical records because his office had closed.

Mr. Allen testified Ms. Beaudoin was handcuffed at Walmart's Customer Service desk when he arrived at the store. He described her as scared, crying, embarrassed, very stressed, and confused. She was holding her stomach and had welts on her wrists from the handcuffs. Mr. Allen explained customers saw her handcuffed and being detained in the middle of the store near the check-out lanes. He also testified Ms. Beaudoin no longer touches cash and uses only a debit card. He stated she continues to relive her experience and continues to suffer anxiety, mental anguish, and embarrassment as a result of the incident. He described the experience as being "burnt on her brain."

Ms. Beaudoin's testimony, together with Mr. Allen's testimony and her medical records, establish the Walmart incident exacerbated her pre-existing anxiety and subjected her to public humiliation, mental anguish, and embarrassment. The evidence does not, however, establish she was diagnosed with PTSD as she contends.

Walmart urges the trial court's award of $150,000.00 is excessive and urges this court to reduce the award to $40,000.00. In *Thomas v. Busby*, 95-1147 (La.App. 3 Cir. 11/13/96), 682 So.2d 1025, *writ denied,* 96-2990 (La. 2/21/97), 688 So.2d 517, this court upheld a $25,000.00 defamation award based on the plaintiff's testimony that he was embarrassed and humiliated for being stopped at a Walmart gardening center and accused in front of other customers of stealing three bags of soil that he was actually returning for a refund. Thomas testified he was embarrassed and humiliated and was consumed by the incident for a few weeks after the incident. He did not seek professional treatment. The incident occurred in May 1994. Adjusted for inflation as of the November 2023 trial date, using the U.S. Bureau of Labor Statistics Consumer Price Inflation Calculator[2], the value of this award was $50,000.00 at trial.

In *Cluse v. H & E Equipment Services, Inc.*, 09-574 (La.App. 3 Cir. 3/31/10), 34 So.3d 959, *writ denied,* 10-994 (La. 9/17/10), 45 So.3d 1043, after a piece of his heavy equipment was wrongfully seized off a work project and he was accused of being a thief, the plaintiff sued to recover damages for embarrassment and humiliation. The plaintiff, a businessman and police juror, was normally very active and regularly interacted with people, but, after these accusations were made public, he just went to work and then home. He suffered embarrassment,

---

[2] The CPI Inflation Calculator is located at https://www.bls.gov/ data/inflation_calculator. htm.

humiliation, anxiety, mental anguish, and hurt feelings. This court affirmed the jury's award of $25,000.00. Adjusted for inflation as of the November 2023 appellate decision date, using the U.S. Bureau of Labor Statistics Consumer Price Inflation Calculator, this value of this award was approximately $38,000.00 at trial.

Walmart cites *Dauzat v. Dolgencorp, LLC*, 15-1096 (La.App. 3 Cir. 4/6/16), 215 So.3d 833, *writ denied,* 16-832 (La. 6/17/16), 192 So.3d 766, where the two plaintiffs were awarded $20,000.00 each after being wrongfully accused of shoplifting and arrested. Evidence at trial established the incident injured their reputations and caused them to experience anger, stress, shame, anxiety, feelings of personal humiliation, embarrassment, as well as mental anguish and suffering. Adjusted for inflation, the value of this award was approximately $27,000.00 at trial.

Having reviewed the awards in the above cases, we find Ms. Beaudoin's damage award of $150,000.00 is so high in light of her injuries and awards for similar injuries that it shocks the conscience. However, we also find she is entitled to damages greater than those awarded to the plaintiffs in the above cited cases and the $40,000.00 suggested by Walmart because she was detained, handcuffed, and patted down in public which required her to expose her pregnant stomach. Moreover, the evidence shows the detention has had a lasting effect on her. Accordingly, we reduce Ms. Beaudoin's award to $75,000.00.

## DISPOSITION

For the reasons discussed above, we affirm the jury's assessment of liability but reduce its damage award to $75,000.00. All costs are assessed to Wal-mart Louisiana, LLC and Walmart Inc.

**AMENDED AND AFFIRMED AS AMENDED.**